**AMARCO PETROLEUM, INC., and Lowell T. Cage, Trustee for Amarco Petroleum, Inc., Appellants,**

v.

**TEXAS PACIFIC INDEMNITY COMPANY, Appellee.**

No. B14–93–00557–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 15, 1994.

Rehearing Overruled Dec. 29, 1994.

Tim S. Leonard, David Scott Curcio, Houston, for appellants.

William M. Coats, Nancy Manderson, Stephen L. Baskind, Houston, for appellee.

Before SEARS, LEE and BARRON, JJ.

## OPINION

BARRON, Justice.

This is an appeal from a summary judgment in favor of Texas Pacific Indemnity Company (Texas Pacific) denying payment on a fidelity bond based on a defense of limitations. Amarco Petroleum, Inc., (Amarco) and Lowell T. Cage, the trustee in bankruptcy for Amarco, bring three points of error challenging the district court's judgment. In its first two points, Amarco claims the district court erred because it failed to apply rules of construction relating to insurance contracts and forfeiture provisions, and because a genuine issue of material fact existed as to the date Amarco's claim against Texas Pacific accrued. In their final point, Amarco argues the district court erred because Texas Pacific failed to negate its estoppel defense as a matter of law. We affirm.

Amarco owned and operated a petroleum tank storage facility. Amarco purchased a Comprehensive Dishonesty, Disappearance and Destruction Policy from Texas Pacific. The policy covered losses from dishonest employee acts covering the two year period from February 1983 through February 1985. The policy was subject to certain conditions, including a non-assignment clause and a twenty-eight (28) month limitations period for bringing suit for denial of a claim.

Melvin Powers owned Amarco and was chairman of the board at the time the policy issued. Herb Williams was President, Vincente Scippa was Vice–President, and James Plante was the plant manager. In June, 1983, Amarco leased tanks to Atlantic Richfield Company (ARCO) for petroleum storage. In 1983, 1984, and 1985 Scippa, Plante, and another employee, Alicia Morgan, jointly stole over four million dollars worth of petroleum products from the storage facility. Most of those products were owned by ARCO. The plot was exposed in 1985.

Mel Powers and Amarco entered bankruptcy by the end of 1983. Lowell Cage was

appointed trustee. After ARCO discovered the thefts, it filed a suit against Amarco, Powers, Williams, and Cage (as trustee). Amarco filed a claim with Texas Pacific. On April 17, 1990, Texas Pacific denied that claim. Texas Pacific detailed the reasons it denied the claim in a letter which traced Texas Pacific's investigation of the claim. In a nutshell, the letter denied coverage for losses in which James Plante was involved.

Six months later, in October 1990, ARCO and Amarco entered into an agreed judgment. The agreed judgment included an attempt to assign Amarco's rights under the fidelity bond to ARCO, without Texas Pacific's knowledge or consent. In December 1990, ARCO obtained a judgment against Texas Pacific on the policy. The case was tried on the theory that Texas Pacific wrongfully denied coverage for Morgan and Scippa. The jury questions specifically excluded James Plante from consideration. This Court reversed and rendered judgment for Texas Pacific based on the anti-assignment clause in the policy which precluded ARCO's suit. *Texas Pacific Indemnity Company v. Atlantic Richfield Company,* 846 S.W.2d 580 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

One day after that opinion, in January 1993, Amarco sued Texas Pacific to enforce payment on the policy, alleging breach of contract, breach of the duty of good faith and fair dealing, and violations of the Deceptive Trade Practices Act (DTPA). Amarco's complaint involved the failure by Texas Pacific to provide coverage for the dishonest acts of Vincente Scippa and Alicia Morgan. The trial court granted summary judgment for Texas Pacific based on the twenty-eight (28) month limitations provision included in the policy.

Amarco raises three points of error: (1) the trial court failed to properly apply the rules of construction applicable to insurance contracts and forfeiture provisions; (2) Texas Pacific failed to establish the date Amarco's causes of action accrued as a matter of law; and (3) Texas Pacific failed to negate Amarco's estoppel defense as a matter of law. For these reasons, Amarco claims Texas Pacific was not entitled to summary judgment.

The standards for reviewing a summary judgment are well established. It is incumbent upon the movant in a summary judgment proceeding to demonstrate, through his motion and supporting evidence, (1) there is no genuine issue of material fact, and (2) he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management, Inc.,* 690 S.W.2d 546, 548–549 (Tex.1985). To decide whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. Every reasonable inference must be indulged in favor of the non-movant and any doubts are resolved in his favor. *Id.*

## I. RULES OF CONSTRUCTION

■ Both parties agree that causes of action on an insurance policy, including bad faith claims, do not accrue until liability is denied by the insurer. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex. 1990). Where both parties disagree, however, is on the meaning to be ascribed a letter denying coverage sent April 17, 1990, and the policy sections upon which that denial was based. When language used in an insurance contract is susceptible to two or more reasonable interpretations, the construction favoring coverage will be adopted. *Kelly Associates v. Aetna Cas. And Sur. Co.,* 681 S.W.2d 593, 596 (Tex.1984); *See also Blaylock v. American Guarantee Bank Liability Ins. Co.,* 632 S.W.2d 719, 721 (Tex.1982); *Ramsay v. Maryland American General Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976).

Texas Pacific contends the letter sent on April 17, 1990 completely denied liability for the claim. Amarco asserts, however, the letter was not a complete denial of coverage. Amarco contends a reasonable interpretation of the letter is that Texas Pacific did not deny the claim involved in this lawsuit but was merely an exclusion of a specific employee from coverage under the fidelity bond. Amarco's contention is based on the statement:

> The overwhelming evidence indicates that Mr. Williams was aware of Jim Plante's prior criminal record at the time the Amarco policy was issued. Thus, based on the provisions of Sections 7 and 15 of the

policy as quoted above, we respectfully decline coverage of the claim you have made on Policy No. 8095–25–44 for losses involving James Plante at the Deer Park Texas facility.

Section 7 of the policy excludes coverage for employees whom the insured knows to have committed fraudulent or dishonest acts. Section 15 cancels coverage as to employees once the insured discovers an employee has committed a fraudulent or dishonest act. Amarco contends the letter clearly limits the applicability of these exclusions to James Plante, not Vincente Scippa or Alicia Morgan.

Amarco misapprehends the effect of the exclusion on their claims. The policy covered losses caused by the dishonest acts of employees. James Plante, however, fell under the exclusions contained in sections 7 and 15; consequently, he was not covered under the policy. Likewise, losses caused by his dishonest acts also were not covered.

The thefts for which Amarco seeks coverage were a conspiracy involving Plante, Scippa, Morgan, and others. It is uncontested Plante acted with Scippa, Morgan, and others. Texas Pacific's letter clearly denied any claims for losses *involving* Plante. There is nothing in the record about any losses from Scippa and Morgan other than those involving Plante. Plante was a key player in the scheme and thus "involved" in all the thefts. Amarco's construction ignores reality and for this reason is unreasonable. Adopting Amarco's interpretation would imply there were two or more separate schemes to steal petroleum products, a scenario not supported by the facts.

Moreover, Amarco's construction isolates one sentence and ignores the rest of the letter. The letter, taken in its entirety is a complete denial of the claim. It discusses the ARCO lawsuit and Amarco's request for coverage and a defense. It discusses the theft scheme, carried out by James Plante, Scippa, and numerous other Amarco employees with Mel Power's knowledge and approval. It states that 50% of the proceeds derived from the scheme benefitted the insured, Amarco, and Mel Powers as an individual. Vincente Scippa and Alicia Morgan,

the two persons whom Amarco claims were not the basis of Texas Pacific's denial of coverage, were discussed in the letter as having been named suspects in the theft scheme. As we have already stated, the letter expressly denied coverage for any losses involving Plante, and it is uncontested that Scippa and Morgan acted with Plante.

There is only one reasonable interpretation for Texas Pacific's letter on April 17, 1990: Texas Pacific denied liability for any losses in which Plante was involved because he had a prior criminal record and Amarco's officers knew this at the times the policy issued and the losses occurred. Plante was not being excluded from coverage; the losses caused by him were being excluded from coverage.

Amarco also argues the letter left other issues open. For example, Amarco notes Texas Pacific reserved "other policy defenses or other reasons for denying coverage or denying payment" of the claim. Amarco postulates Texas Pacific expected further activity on remaining issues relating to the claim. We disagree. Such reservations are common and provide additional future protection should the basis upon which an insurance company denies a claim fail.

The trial court did not fail to apply the appropriate rules of construction regarding insurance policies to the letter denying coverage. Where language in a policy is not subject to two or more reasonable interpretations, *e.g.*, not ambiguous, the intent of the parties can be discerned and the plain language of the policy will be given effect. *Kelly Associates*, 681 S.W.2d at 596. Moreover, the trial court did not err in granting summary judgment on this issue. There were no reasonable inferences to be drawn from the letter which gave rise to a genuine issue of material fact. We overrule Amarco's first point of error.

## II. DATE CAUSE OF ACTION ACCRUED

■ Although Texas Pacific denied coverage on April 17, 1990, Amarco argues the cause of action did not accrue until October 6, 1990, the date judgment was entered against it in the suit brought by ARCO.

Amarco claims the policy's terms provide the insurer cannot refuse a claim until legal liability attaches. Under this theory, since there was no judgment against Amarco until October 1990, the prior denial by Texas Pacific was ineffective to begin the running of the limitations period.

Amarco's argument is without merit. Section 5 of the policy states:

OWNERSHIP OF PROPERTY: INTERESTS COVERED

Section 5. The insured property may be owned by the Insured, or held by the insured in any capacity *whether or not the Insured is liable for the loss thereof,* or may be property as respects which the Insured is legally liable ... (emphasis ours).

Amarco quotes only the last 12 words of this provision in support of its argument the policy's terms provide the insurer cannot refuse a claim until legal liability attaches. A reading of the entire policy section demonstrates a determination of legal liability for losses is irrelevant to the question of when a claim accrues. The section is not ambiguous or susceptible to more than one interpretation. The intention of the parties can be ascertained from the plain meaning of the words. *Kelly Associates,* 681 S.W.2d at 596. We overrule Amarco's second point of error.

### III. ESTOPPEL

■ Amarco next argues it properly alleged and offered summary judgment evidence on the defense of estoppel to Texas Pacific's limitations defense, and Texas Pacific failed to carry its burden of negating this defense. Amarco predicates its estoppel defense on the duty of good faith and fair dealing which an insurer owes its insured. *See Arnold v. Nat'l County Mutual Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). Relying on Tex.Rev.Civ.Stat.Ann. art. 21.21–2 § 2(b)(2) (Vernon Supp.1994), and *Chase Commercial Corp. v. Datapoint Corp.,* 774 S.W.2d 359, 366 (Tex.App.—Dallas 1989, no writ), Amarco asserts there is an obligation to communicate with the insured on matters relevant to a claim implicit in the duty of good faith and fair dealing.

Amarco states Texas Pacific received notice Amarco had assigned its claims under the policy to ARCO no later than December 21, 1990, the date ARCO sued Texas Pacific on the claim. Amarco further alleges Texas Pacific permitted ARCO to pursue the claim as an assignee without advising Amarco that it did not approve of the assignment. Amarco further argues it relied on the ARCO suit to extinguish part of its liability to ARCO. Quoting *Arnold,* Amarco contends Texas Pacific failed to act with "that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business." *Arnold,* 725 S.W.2d at 167. Amarco argues Texas Pacific should now be estopped from asserting the limitations bar given its silent acceptance of the prosecution of the claim in the earlier lawsuit.

■ Texas Pacific's acceptance of the prosecution of the claim in the prior lawsuit was anything but silent. The cornerstone of Texas Pacific's defense was the non-assignability of rights under the policy without its prior approval. In that case this Court sustained Texas Pacific's first point of error on appeal, reversed a jury verdict favoring ARCO, and rendered judgment that ARCO take nothing on that very ground. Furthermore, an insured is deemed to know the contents of its insurance policy. *Shindler v. Mid–Continent Life Ins. Co.,* 768 S.W.2d 331 (Tex.App.—Houston [14th Dist.] 1989, no writ). Texas Pacific had no duty to come forward and tell Amarco what was in that policy: the non-assignment clause was clear and unambiguous. Amarco knew rights could not be assigned under the policy but assigned them anyway.

Texas Pacific correctly points out estoppel protects those who are misled, or have detrimentally relied on the position of another. The doctrine assumes the party asserting estoppel did not have information and was denied access to information by one who made false representations or concealed facts. *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991); *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952); *see also O'Dowd v. Johnson,* 666 S.W.2d 619 (Tex.App.—Houston [1st

Dist.] 1984, writ ref'd n.r.e.). Amarco had access to the information: the policy spelled out the non-assignment clause. We overrule Amarco's third point of error.

## IV. CONCLUSION

In conclusion, we hold the trial court did not fail to apply the appropriate rules of construction regarding insurance policies to the letter denying coverage. The plain language of the letter was not ambiguous and the intent of the parties could be easily ascertained. We also hold a determination of legal liability for losses is irrelevant to the question of when the claim accrued. The claim accrued when Texas Pacific denied coverage on April 17, 1990. Finally, Texas Pacific negated Amarco's estoppel defense as a matter of law. Texas Pacific did not conceal facts or deny Amarco access to key information. The policy clearly stated rights under the policy could not be assigned unless first approved by Texas Pacific. Moreover, Texas Pacific asserted the anti-assignability clause as a key defense in the earlier suit. For these reasons, we affirm the judgment.