**TIG INSURANCE COMPANY and Safety Lights Sales & Leasing, Inc., Plaintiffs,**

v.

**SEDGWICK JAMES OF WASHINGTON and Lumbermens Mutual Casualty Company, Defendants.**

**No. CIV.A. H–99–0949.**

United States District Court, S.D. Texas, Houston Division.

Jan. 26, 2001.

Lance Kevin Thomas, Hays McConn et al, Houston, TX, Bruce Clifford Gaible, Hays McConn Rice & Pickering, Houston, TX, for TIG Insurance Co., plaintiff.

C Henry Kollenberg, Crain Caton & James, Houston, TX, for Sedgwick James of Washington, defendant.

Veronica M Czuchna, Jordan & Carmona, Austin, TX, for Lumbermens Mutual Casualty Company, defendant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This is an insurance coverage dispute. In 1999, Plaintiff TIG Insurance Company ("TIG") paid $235,000 in settlement of a claim brought against its insured, Plaintiff Safety Lights Sales & Leasing, Inc. ("Safety Lights").[1] Plaintiffs seek to recover from Lumbermens Mutual Casualty Company ("Lumbermens") this sum, as well as $38,685.02 in attorneys' fees paid by TIG

---

1. Plaintiff TIG brings this suit in the name of Safety Lights under TIG's rights of subrogation.

on behalf of Safety Lights, claiming that Safety Lights had primary or concurrent coverage under an insurance policy issued by Lumbermens. Plaintiffs have also sued Sedgwick James of Washington ("Sedgwick"), the insurance broker who represented to Safety Lights that it was insured by Lumbermens. All parties have moved for summary judgment. *See* Plaintiffs' Motion for Summary Judgment [Doc. # 36] ("Plaintiffs' Motion"); Defendant Lumbermens Mutual Casualty Company's Motion for Summary Judgment [Doc. # 33] ("Lumbermens' Motion"); Defendant Sedgwick James' Motion for Summary Judgment [Doc. # 35] ("Sedgwick's Motion"). Having considered the parties' briefs, all matters of record and the applicable authorities, the Court concludes that Plaintiff's Motion should be **denied;** and Defendant Lumbermens' Motion should be **granted.** The Court further concludes that Plaintiffs' claims against Sedgwick fail as a matter of law and Defendant Sedgwick's Motion should be **granted.**

## I. *BACKGROUND FACTS*

Between 1996 and 1998, Lumbermens provided commercial general liability insurance to Corporate Express, Inc. Sedgwick was an insurance broker. Lumbermens authorized Sedgwick to solicit certain types of insurance on Lumbermens' behalf. Sedgwick was also authorized, on a limited basis, to enter into binders for insurance contracts on behalf of Lumbermens. *See* Agency Agreement, Ex. 1 to Affidavit of Richard Otto (Ex. B to Lumbermens' Motion) ("Otto Affidavit"). Sedgwick was the insurance broker for Corporate Express, Inc. and its affiliates.

For the time in issue, Lumbermens issued two commercial general liability ("CGL") insurance policies to Corporate Express, Inc. and its affiliates. The first policy, Policy No. 5AA 038 362 00 ("Policy 362 00"), provided coverage from December 31, 1996 until February 28, 1998. *See* Ex. A to Lumbermens' Motion. The named insureds on that policy were U.S. Delivery Systems, Inc. and its subsidiaries, United Transnet, Inc. and its subsidiaries, and Corporate Express, Inc. (the parent company of U.S. Delivery Systems and United Transnet). Policy 362 00 contains no provision for additional insured coverage.

Lumbermens also issued CGL Policy No. 5AA 038 300 01 ("Policy 300 01"). That policy provided coverage from February 28, 1997 until February 28, 1998. The named insured on the policy was Corporate Express, Inc., including its subsidiaries. However, Corporate Express Delivery Systems, Inc. ("CEDS") and its subsidiaries specifically were excluded from coverage under the "named insured" provision of Policy 300 01. *See* Ex. B to Sedgwick's Motion. Policy 300 01 provided additional insured coverage to persons or organizations "where required by written or oral contract" with respect to "liability arising out of your [the named insured's] operations or premises owned by or rented to you [the named insured]."

U.S. Delivery Systems is a subsidiary of CEDS. Therefore, U.S. Delivery Systems was insured only under Policy 362 00, and was expressly excluded from coverage under Policy 300 01. Via Net is a U.S. Delivery Systems Houston subsidiary, and, therefore, also was insured only under Policy 362 00.

One of Via Net's customers was Safety Lights. In March 1996, Safety Lights sent a letter to Via Net, stating that Via Net was required to produce a certificate of insurance for (among other things) general and auto liability in order to remain a vendor with Safety Lights. The letter also stated that the certificate of insurance should evidence "waiver of subrogation and additional insured in favor of Safety

Lights Company" within fifteen days. *See* Letter from Judy Messer, Safety Lights Co., to Via Net, March 19, 1996 (Ex. G to Plaintiffs' Mem.).

In February 1997, Sedgwick issued a certificate of insurance to Safety Lights as "holder." The certificate lists Via Net and U.S. Delivery Systems as the insureds under Policy 362 00. The top of the certificate states, "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." *See* Certificate of Insurance (Ex. D to Plaintiffs' Mem.). The bottom of the certificate contains the statement, "Certificate holder [Safety Lights] is added as additional insured re: general liability."

On June 25, 1997, Guy Wright, an employee of U.S. Delivery Systems, Inc.,[2] was injured while delivering a steel plate to Safety Lights. Wright's hand was crushed during unloading when Safety Lights personnel dropped the plate. Wright sued Safety Lights. On October 27, 1997, counsel for Safety Lights in Wright's litigation (the *"Wright* suit") notified Sedgwick of the suit and requested a defense and indemnification pursuant to the representation of additional insured status on the certificate of insurance. *See* Letter from Reid Gettys to Lori Lang, October 27, 1997 (Ex. E to Plaintiffs' Mem.). On December 5, 1997, Dennis Cupp of on behalf of Lumbermens[3] wrote back to Gettys,

stating that Safety Lights was not an additional insured under any policy issued by Lumbermens to U.S. Delivery Systems. *See* Letter from Dennis Cupp to Reid Gettys, December 5, 1997 (Ex. F to Plaintiffs' Mem.).

The *Wright* suit against Safety Lights was eventually settled in November 1999 for $235,000. Defense costs for Safety Lights were $38, 685.02, which TIG paid.

On February 10, 1999, TIG filed suit against Sedgwick and Lumbermens in Texas state court. Defendant Lumbermens removed the case to this Court on March 30, 1999. In their amended complaint, Plaintiffs TIG and its insured Safety Lights seek a declaration that Defendants were obligated to defend and indemnify in the *Wright* suit. In the alternative, Plaintiffs seek reformation of Policy 362 00 to conform to the "intent of the parties" to provide coverage for Safety Lights under that insurance policy. Plaintiffs also allege violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("DTPA"), breach of contract, negligence and negligent misrepresentation, breach of the duty of good faith and fair dealing, and fraud. Plaintiff TIG also claims it is entitled to contractual and equitable subrogation.[4] *See* Plaintiffs' First Amended Original Complaint [Doc. # 21] ("Complaint"). Plaintiffs, Lumbermens and Sedgwick each have moved for summary judgment on all claims.

---

2. The record is unclear if Wright worked for Via Net, or U.S. Delivery Services. The distinction does not appear material.

3. Cupp actually was employed by Kemper Risk Management Services, an affiliate of Kemper National Insurance ("Kemper"), the parent company of Lumbermens. The Court refers to these companies interchangeably, adopting the parties' practice in the documents submitted as part of the summary judgment record.

4. Plaintiffs do not differentiate between the Defendants in the Complaint. However, from the Complaint and oral argument held January 18, 2001, it appears that the only claims applicable to Sedgwick, as an insurance broker, are the claims for violation of the Texas Insurance Code, the DTPA, negligence, misrepresentation and fraud.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) *(en banc);* *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The facts are to be reviewed with all "justifiable inferences" drawn in favor of the party opposing the motion. *See Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir.1998) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski,* 102 F.3d 190, 193 (5th Cir.1996).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith,* 158 F.3d at 911. The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate. *See Morris,* 144 F.3d at 380. This is accomplished by producing "significant probative evidence" that there is an issue of material fact so as to warrant a trial, *see Texas Manufactured Hous. Ass'n v. Nederland,* 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied,* 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 161 (5th Cir.1996); *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994), and that is "sufficient to support a jury verdict." *Morris,* 144 F.3d at 380; *accord Doe v. Dallas Indep. School Dist.,* 153 F.3d 211, 215 (5th Cir.1998). This burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See, e.g., Morris,* 144 F.3d at 380. Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *See id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* Dispute about a material fact is genuine only if evidence is such that reasonable jury could return a verdict for nonmoving party. *See Stafford v. True Temper Sports,* 123 F.3d 291, 294 (5th Cir.1997); *Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir.1995); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) *(en banc),* 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's

case, and on which that party will bear the burden at trial. *See Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

## III. *DISCUSSION*

### A. *Liability of Lumbermens for Coverage Under Policy 362 00 and Claim of Reformation*

Plaintiffs claim that Defendant Lumbermens should provide coverage under Policy 362 00 under various theories. For the reasons discussed below, Plaintiffs' arguments are unavailing.

### 1. Certificate of Insurance

Plaintiffs contend that the certificate of insurance issued to them by Sedgwick, which states that Safety Lights is an additional insured under Policy 362 00, creates insurance coverage under Policy 362 00.

█ It is well-established under Texas law that when a certificate of insurance contains language stating that the certificate does not amend, extend, or alter the terms of any insurance policy mentioned in the certificate, the terms of the certificate are subordinate to the terms of the insurance policy. The certificate of insurance will not suffice to create insurance coverage if such coverage is precluded by the terms of the policy. *See generally Wann v. Metropolitan Life Ins. Co.,* 41 S.W.2d 50, 52 (Tex.Com.App.1931) (noting that certificate of insurance does "not constitute the complete contract of insurance" and must be construed in connection with underlying insurance policy); *Boyd v. Travelers Ins. Co.,* 421 S.W.2d 929 (Tex. Civ.App.-Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Granite Construction Co., Inc. v. Bituminous Ins. Co.,* 832 S.W.2d 427 (Tex.App.-Amarillo 1992, n.w.h.).

In *Granite,* the plaintiff contractor was furnished with a certificate of insurance stating that he was an additional insured under the hiring company's general liability policy. The certificate of insurance stated on its face that coverage was "subject to all terms, exclusions and conditions" of the underlying insurance policy. *Id.* at 428. The insurance policy limited additional insured coverage to "liability arising out of operations performed for [the additional] insured by or on behalf of the named insured." *Id.* The plaintiff contractor attempted to claim insurance coverage for damages arising out of an accident not within the policy's additional insured provision. The court held that there was no coverage, noting that "by its very language, [the certificate] specified that the insurance coverage was that provided by, but subject to the terms, exclusions and conditions of, the named insured policies." *Id.* at 429. The court held that "the insurance afforded [plaintiff] is provided by the insurance policies, not by the certificate of insurance." *Id.* at 430. *See also CIGNA Ins. Co. of Texas v. Jones,* 850 S.W.2d 687 (Tex.App.-Corpus Christi 1993, n.w.h.) (certificate of insurance does not extend the terms of the insurance policies certified therein); *C & W Well Service, Inc. v. Sebasta,* 1994 WL 95680, at *7 (Tex.App.-Houston [14th Dist.] 1994, n.w.h.) (citing *Granite* and noting insurance coverage is that provided by policy, not certificate of insurance); *RNA Investments, Inc. v. Employers Ins. of Wausau,* 2000 WL 1708918 (Tex.App.-Dallas 2000, n.w.h.) (certificates of insurance in and of themselves do not create insurance coverage).[5]

█ The certificate of insurance issued by Sedgwick clearly states that the certificate is issued "as a matter of information

---

5. *Sebasta* and *RNA Investments* are not published cases; therefore, under Tex.R.App. P. 47.7, the opinions are not to be cited as binding authority. The Court nevertheless finds their reasoning to be persuasive.

only," and that it does not purport to "amend, extend, or alter" the terms of any insurance policies listed therein. Policy 362 00 does not make *any* provision for additional insured coverage. As explained in *Granite*, a certificate of insurance cannot create insurance coverage when the underlying policy does not provide for coverage. Plaintiffs do not cite any Texas authority to support their contention that the certificate of insurance *per se* creates a contract with a carrier for insurance coverage for the holder of the certificate, such as Safety Lights.

Plaintiffs contend that they never received a copy of Policy 362 00, and that they relied upon Sedgwick's representations of coverage on the certificate of insurance. This argument does not change the result. Plaintiffs have cited no Texas authority for the proposition that one may reasonably rely on the text of the certificate of insurance in lieu of the policy language, nor is the Court aware of such authority. Indeed, the above-cited cases support the practical result that the holder of a certificate of insurance should obtain the insurance policy to ascertain his coverage.

Therefore, the Court concludes that Plaintiffs are not entitled to insurance coverage by virtue of the certificate of insurance issued by broker Sedgwick.

### 2. Mutual Mistake

Plaintiffs also argue that Policy 362 00 is "incomplete" and that it does not "reflect the underwriting intent that it include a blanket additional insured endorsement." Plaintiffs' Reply to Defendant Lumbermens Response to Plaintiffs' Motion for Summary Judgment, at 6. Plaintiffs seek reformation of Policy 362 00 to include an additional insured provision.

Under Texas law, insurance policies are interpreted and construed according to the rules applicable to contracts generally. *National Union Fire Ins. Co. v. CBI Industries,* 907 S.W.2d 517, 520 (Tex.1995). In construing a written contract, a court must "ascertain the true intent of the parties as expressed in the instrument." *Id.* (citing *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994)); *Ideal Lease Service Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex.1983). Unless the written contract is ambiguous, the court must give effect to the parties' intentions as written. *Id.; Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 728 (Tex.1981). Lumbermens Policy 362 00 is not ambiguous on its face. There is no evidence in that Policy to support Plaintiffs' conclusory assertion that the parties intended to include a blanket additional insured provision. Indeed, the language of the Policy explicitly belies Plaintiffs' contention.

■ Plaintiffs contend that the absence of a blanket additional insured provision in Policy 362 00 was the result of a mutual mistake among Lumbermens, Sedgwick, and Corporate Express. When a party alleges mutual mistake, the court should not interpret the language contained in the contract but should determine whether the contract itself is valid. *Williams v. Glash,* 789 S.W.2d 261, 264–265 (Tex.1990). A court may consider parol evidence to determine the existence of a mutual mistake. *Valero Energy Corp. v. Teco Pipeline Co.,* 2 S.W.3d 576, 589 (Tex.App.-Houston [14th Dist.] 1999, n.w.h.).

■ Texas courts have clarified that the doctrine of mutual mistake should not be made freely available because parties must be able to depend upon the finality of their written contracts. *Williams,* 789 S.W.2d at 265; *Wallerstein v. Spirt,* 8 S.W.3d 774 (Tex.App.-Austin 1999, n.w.h.). A party raising mutual mistake must prove there has been a definite agreement between the parties that has been misstated in the written memorandum because of a mistake common to both contracting parties. *Wey-*

*nand v. Weynand,* 990 S.W.2d 843, 846 (Tex.App.-Dallas 1999, n.w.h.).

Plaintiffs have not produced evidence that establishes—or raises a genuine fact question of-a mutual mistake between the original parties to Policy 362 00. Plaintiffs point to correspondence in February and March 1996 between Sedgwick and Lumbermens personnel regarding the Corporate Express, Inc. account. *See* Ex. Q to Plaintiffs' Mem., Letter from Dudley Johnson, Sedgwick James of Washington, to Richard Otto, Kemper National Insurance Company, March 18, 1996; Memorandum from Lisa Christensen and Dick Otto, Kemper National Insurance Companies, to Dudley Johnson, Sedgwick James of Washington, February 29, 1996. The correspondence, referring generally to "Corporate Express, Inc.," reflects that the parties agreed upon the wording of an "additional insured" endorsement providing additional insured coverage "as required by written or oral contract." *See id.* However, the correspondence does not identify the policies, dates of coverage, or lines of insurance to which the additional insured provision would apply.[6] Indeed, Policy 300 01 does contain an additional insured endorsement, providing additional insured coverage where required by written or oral contract, for liability arising out of the named insured's operations or premises. The correspondence on which Plaintiffs rely does not thus establish that the parties to Policy 362 00 intended to include a similar additional insured provision in that Policy.

■ Plaintiffs also rely on evidence produced by Defendant Sedgwick in response to Plaintiffs' Motion for Summary Judgment. Sedgwick takes the position that the representations on the certificate of insurance are correct.[7] *See* Defendant Sedgwick's Response to Plaintiffs' Motion for Summary Judgment ("Sedgwick's Response"), at 2. Carly List, a Sedgwick account manager for the Corporate Express, Inc. account, states that the insurance policy for United Transnet was intended to be subject to the terms and conditions of other policies issued to Corporate Express, Inc. entities.[8] *See* Affidavit of Carly List ("List Affidavit"), attached to Sedgwick's Response. As evidence, List refers to a letter she sent to Richard Otto (of Kemper) on December 16, 1996. *See* Ex. A to List Aff. However, the letter nowhere mentions additional insured coverage under the United Transnet policy, and thus List's intention at the time was not clearly expressed.[9] Most importantly, List's December 16, 1996 letter simply does not constitute clear evidence demonstrating

---

**6.** While Johnson's March 18, 1996 Memorandum to Otto also refers to "U.S. Delivery customers," there is no acknowledgment by Kemper for Lumbermens that Lumbermens ultimately agreed to the additional insured provision as to U.S. Delivery.

**7.** Sedgwick states that copies of certificates of insurance issued were forwarded to Lumbermens in the normal course of business. *See* Affidavit of Kristoffer Whitters (Ex. A to Sedgwick's Motion) ("Whitters Affidavit"). Lumbermens denies that it received the certificate of insurance showing Safety Lights as an additional insured under Policy 362 00. *See* Otto Aff., ¶ 5.

**8.** List does not mention specific policy numbers. The Court notes that United Transnet, Inc. was also a named insured, along with U.S. Delivery Systems, Inc., on Policy 362 00. However, in the absence of any mention of Policy 362 00 in List's affidavit or supporting correspondence, the Court cannot assume that references to policy provisions for United Transnet were also meant to apply to U.S. Delivery Systems. United Transnet is a separate entity from Via Net and its parent, U.S. Delivery Systems.

**9.** Otto's reply to List's oblique reference in her letter to certificates of insurance is vague at best: "I am in agreement with the exception of certificates. We have agreed on how

that *Lumbermens* intended Sedgwick to issue certificates of insurance evidencing additional insured status for Safety Lights or any others under Policy 362 00.

List also states in her affidavit that it was her understanding that Policy 362 00 would be subject to the terms and conditions of Policy Nos. 5AA 038 300 00 ("Policy 300 00") and 5AA 038 301 00 ("Policy 301 00").[10] She states that both policies included an additional insured provision.[11] Consistent with List's and Sedgwick's position in this case, Sedgwick issued a "Confirmation of Placement" dated February 27, 1997, to CEDS stating that Policy 362 00, among others issued to CEDS, was "subject to policy terms, conditions, limitations, and exclusions contained in polices 5AA 038 300 00 and 5AA 038 301 00." *See* Confirmation of Placement, Ex. B to List Affidavit. The "Confirmation of Placement," however, is a document issued by Sedgwick to CEDS, and contains no indication that *Lumbermens* agreed to the broad provisions therein, or intended specifically to include an additional insured provision in the new Policy 362 00 for

CEDS and its subsidiaries. Evidence of a unilateral mistake will not suffice to invalidate a contract or permit reformation on the basis of mutual mistake. *Wallerstein,* 8 S.W.3d at 781; *Cigna Ins. Co. v. Rubalcada,* 960 S.W.2d 408, 412 (Tex.App.-Houston [1st Dist.] 1998, n.w.h.).

List also states in her affidavit that Lumbermens employees, when notified of the *Wright* suit, were concerned with whether Safety Lights was an additional insured pursuant to oral or written contract. *See* List Aff., at 2; *see also* Letter from Dennis Cupp to Reid Gettys, December 5, 1997 (noting that Safety Lights is not an additional insured under any Lumbermens policy but also asking attorneys for Safety Lights if any oral contract [with a named insured on a Lumbermens policy] for additional insured status existed). Lumbermens' inquiries were made by employees different from those responsible for negotiating the policy coverage. These inquiries, after the accident for which coverage is sought, are not probative evidence of Lumbermens' intent when entering into the insurance contract.[12]

---

to issue certificates." *Id.* There is no evidence of record as to the substance of the parties' agreement, or whether it applied to Policy 362 00.

**10.** In its motion for summary judgment, Sedgwick states that it issued thousands of certificates of insurance evidencing additional insured status for Corporate Express. *See* Whitters Aff. However, Sedgwick states that it issued these certificates pursuant to Policy 300 01. *Id.* Sedgwick nowhere mentions in its own Motion for Summary Judgment that it issued, correctly or incorrectly, certificates showing additional insured status under Policy 362 00, other than the single certificate issued to Safety Lights. Counsel for Sedgwick asserted in oral argument that other certificates *were* issued under Policy 362 00, but there is no evidence of this in the record.

**11.** Policy 300 00, covering Corporate Express, Inc. from February 1996 to February 1997,

contains an additional insured provision providing coverage where required by oral or written contract for liability arising out of the named insured's operations or premises. *See* Exs. I & J to Plaintiffs' Mem. No party has produced a copy of Policy 301 00. Both policies are distinct from Policy 300 01, previously mentioned, which contained an additional insured clause but excluded CEDS and its subsidiaries (including Via Net).

**12.** At best, this proof is a mere scintilla of evidence insufficient to raise a genuine question of fact to preclude summary judgment. *See Doe v. Dallas Independent School District,* 153 F.3d 211, 215 (5th Cir.1998) (noting that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff") (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The Court concludes that Plaintiffs have failed to carry their burden to show a genuine fact issue exists that there was a mutual mistake as to additional insured coverage in Policy 362 00. Therefore, the Court finds that Policy 362 00, as written, is unambiguous in its exclusion of additional insured coverage. Plaintiffs' claim for reformation of that policy fails.

### 3. Vicarious Contractual Liability

Finally, Plaintiffs contend that Sedgwick falsely represented that Safety Lights was covered under Policy 362 00. Plaintiffs argue that Sedgwick acted as Lumbermens' recording agent, that Sedgwick had actual or apparent authority to commit to insurance terms for Lumbermens, and that Lumbermens is bound by Sedgwick's representations. The Court is unpersuaded.

■ *Agents and Brokers Distinguished.*—Texas courts have distinguished the duties and abilities, of recording agents, soliciting agents, and brokers. A recording agent is an agent of an insurance company who is authorized to "write, sign and execute insurance policies and to bind the insurer." *Celtic Life Ins. Co. v. Coats*, 831 S.W.2d 592, 597 (Tex.App.-Austin 1992), *aff'd as modified*, 885 S.W.2d 96 (Tex.1994). A soliciting agent is authorized only to receive and forward applications for insurance. *Id.* A soliciting agent cannot enlarge or waive the terms of an insurance policy. The misrepresentations of a soliciting agent cannot bind an insurer. *International Security Life Ins. Co. v. Finck*, 496 S.W.2d 544 (Tex.1973); *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 693 (Tex.1979) (distinguishing insurer's liability caused by representations of recording agent); *Farmer Enterprises, Inc. v. Gulf States Ins. Co.*, 940 S.W.2d 103, 111 (Tex.App.-Dallas 1996, n.w.h.). In *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96 (Tex.1994), the Texas Supreme Court held that an insurer could be liable for the misrepresentations of a soliciting agent if that agent acted with apparent authority. *Id.* at 98. Thus, the liability of the insurer depends on whether the agent was acting with actual or apparent authority. *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998); *Royal Globe*, 577 S.W.2d at 693–94.

■ Texas courts ˌalso recognize the classification of "insurance broker." As a general rule, an insurance broker is considered to be the agent of the insured, not the insurer. *See Continental Casualty Co. v. Bock*, 340 S.W.2d 527 (Tex.Civ.App.-Houston 1960, writ ref'd n.r.e.); *Don Chapman Motor Sales, Inc. v. National Savings Ins. Co.*, 626 S.W.2d 592 (Tex. App.-Austin 1981, writ ref'd n.r.e.); *Guthrie v. Republic National Life Ins. Co.*, 682 S.W.2d 634 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.). A broker acts for the insured in applying for and processing the insurance policy. *Guthrie*, 682 S.W.2d at 637.

■ *Actual Authority.*—Sedgwick and Lumbermens contend that Sedgwick lacked both actual and apparent authority to commit Lumbermens to the insurance terms in issue here. In his affidavit, Richard Otto, underwriting director for the Lumbermens Risk Management Group, states that Sedgwick was not a soliciting or recording agent for Lumbermens. ˌSee Otto Aff., ¶ 4. Sedgwick also disavows a role as an agent of Lumbermens, claiming ˌinstead that it acted as the insurance broker for Corporate Express. *See* Whitters Aff.

The documentary evidence of record is not consistent with all Defendants' contentions. The Agency Agreement between Sedgwick and Lumbermens clearly shows that Sedgwick was an agent for Lumbermens to a limited extent and with limited authority. Sedgwick was authorized to solicit various types of insurance on behalf

of Lumbermens, including general liability insurance. *See* Agency Agreement (Ex. 1 to Otto Affidavit), ¶ 1. The Agency Agreement also states that Sedgwick is authorized, on a limited basis, to "bind [Lumbermens] respecting contracts of insurance" "to the extent specific authority is granted in schedule(s) attached." *Id.* ¶ 2. The pertinent schedule shows that Sedgwick had authority to issue certain binders for insurance on behalf of Lumbermens. Regarding commercial general liability insurance, Sedgwick was authorized to issue a binder for insurance of up to $300,000. *See* Agency Agreement and attached schedule (second page).[13] The Agency Agreement thus gives Sedgwick authority to issue insurance binders, but not actual insurance policies. Policy 362 00 was a CGL policy, with coverage of $10,000,000 in the aggregate and a single occurrence limit of $1,000,000. *See* Ex. A to Lumbermens' Motion. Sedgwick was not actually authorized on Lumbermens' behalf to make binding representations to cover additional insureds under Policy 362 00. The early 1996 correspondence between Sedgwick and Lumbermens produced in Plaintiffs' Exhibit Q supports this conclusion: The parties' correspondence detailed certain aspects of negotiations regarding the Corporate Express, Inc. policies and thus corroborates the conclusion that Sedgwick lacked the authority to set the limits, wording, and particulars of the risks Lumbermens would accept in this large and complicated insurance package. Thus, Plaintiffs have not established a genuine question of fact that Sedgwick had actual authority to bind Lumbermens with representations which enlarged, waived, or otherwise altered the terms of Policy 362 00.

■ *Apparent Authority.*—Plaintiffs alternatively contend that Sedgwick had apparent authority to bind Lumbermens, at least to the additional insured provision that Safety Lights was led to believe was provided by Sedgwick for Lumbermens. In determining whether an agent possessed apparent authority, a court must look only at the acts of the alleged principal. *Morris,* 981 S.W.2d at 672. "One must show that a principal either knowingly permitted an agent to hold itself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority." *NationsBank v. Dilling,* 922 S.W.2d 950, 952–53 (Tex.1996).

■ Plaintiffs claim that Lumbermens permitted Sedgwick to issue certificates of insurance without Lumbermens' prior approval, and that this permission constitutes a grant of apparent authority. This argument is unavailing. A person purporting to rely on an agent's apparent authority must have reasonably believed, based on the acts of the principal, that the agent had authority for the acts in issue. The *principal* must make some manifestation to the plaintiff, a *third party* to the agency relationship, that he is conferring the relevant authority upon the alleged agent. *Ebner v. First State Bank of Smithville,* 27 S.W.3d 287, 301 (Tex.App.-Austin 2000, n.w.h.) (citing *Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 629 (Tex.1981)). Sedgwick's issuance of numerous certificates of insurance without Lumbermens' prior approval does not constitute a grant by Lumbermens of apparent authority to Sedgwick, since Plaintiffs only became aware of this practice by Sedgwick and Lumbermens after the suit commenced (indeed, after Sedgwick's Motion for Summary Judgment was filed). Plaintiffs have produced no evidence that they relied on any actions by *Lumbermens* in 1997, when

---

13. All counsel at oral argument concurred that this is the correct interpretation of the Agency Agreement. *See* Agency Agreement, Schedule, at 1–2. The schedule states, "Agent may issue binders for the insurance and within the limits herein stated."

the certificate of insurance was issued to Safety Lights and prior to Wright's accident.

Therefore, the Court rejects Plaintiffs' vicarious liability arguments.

### 4. Other Claims Against Lumbermens

Having concluded that Plaintiffs have failed to establish or to raise a genuine fact question that Sedgwick was Lumbermens' actual or apparent agent for purposes relevant to the issues before the Court, the Court also concludes as a matter of law that Plaintiffs' claims that Lumbermens negligently or fraudulently misrepresented coverage are legally insufficient. Plaintiffs point to no statements by Lumbermens or its agents that were incorrect or false.

To the extent Plaintiffs also assert other claims based on Lumbermens' failure to defend or indemnify in the *Wright* suit, those claims fail as a matter of law, since Plaintiffs have failed to show entitlement to coverage under Policy 362 00. The Court therefore concludes that Lumbermens is entitled to summary judgment on Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing for failure to defend or indemnify. Furthermore, Plaintiff TIG's claims for contractual and equitable subrogation are moot and therefore must be dismissed.

### B. *Misrepresentation Claims Against Sedgwick*

Plaintiffs have alleged that Sedgwick's issuance of the certificate of insurance certifying that Safety Lights was an additional insured under Policy 362 00 constitutes an actionable affirmative misrepresentation. Plaintiffs have pled common law negligent misrepresentation and fraud, as well as violations of Article 21.21 of the Texas Insurance Code and Section 17.46 of the DTPA.

### 1. Negligent and Fraudulent Misrepresentation

In order to prevail on a claim of negligent or fraudulent misrepresentation, a plaintiff must show that he reasonably relied upon the defendant's false representations. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997) (fraud and negligent misrepresentation claims require reasonable reliance by the plaintiff). Plaintiffs in the instant case have not shown through the probative evidence that they reasonably relied upon the representation of additional insured status on the certificate of insurance.

■ "A claim for misrepresentation can not stand when the party asserting the claim is legally charged with knowledge of the true facts." *Shindler v. Mid–Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex.App.-Houston [14th Dist.] 1989, n.w.h.) (citing *Sutton v. Grogan Supply Co.*, 477 S.W.2d 930, 935 (Tex.App.-Texarkana 1972, no writ)). An insured has a duty to read the insurance policy and is charged with knowledge of its provisions. *Ruiz v. Government Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex.App.-El Paso 1999, n.w.h.); *Pankow v. Colonial Life Ins.*, 932 S.W.2d 271, 277 (Tex.App.-Amarillo 1996, writ denied); *Amarco Petroleum, Inc. v. Texas Pacific Indemnity Co.*, 889 S.W.2d 695, 699–700 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Under Texas law, an insurance agent generally has no duty to explain policy terms to an insured. *Ruiz*, 4 S.W.3d at 841.

■ The Court concludes that Safety Lights, claiming to be an additional "insured" under Policy 362 00, should be held to the same obligation as a named insured to review a policy of insurance on which it seeks to rely, and its reliance solely on the agent's certificate of insurance is not reasonable under the circumstances presented by the admissible evidence. While the

cited cases do not involve additional insureds, there is no admissible evidence to suggest that Safety Lights, had it made the request, would have been unable to obtain and read the insurance policy in issue.[14] Indeed, had the request been made, it is likely that the issues of which CGL insurance policy applied to U.S. Delivery Services and whether an additional insured was permitted would have been detected in a timely fashion.

Moreover, Safety Lights, the holder of a certificate of insurance, was warned it was not entitled to rely on the certificate itself for coverage. The certificate stated to the holder that the certificate did not create coverage. *See Granite*, 832 S.W.2d at 429; *see supra* Section III.A.1. The certificate of insurance issued by Sedgwick prominently stated that it was "issued as a matter of information only" and did not "amend, extend or alter" coverage provided by the listed policies.[15] Had Plaintiffs taken the reasonable step of obtaining a copy of Policy 362 00, the only policy that covered U.S. Delivery Systems and Via Net, the entities with which Safety Lights dealt, Plaintiffs would have learned there was no additional insured coverage in the policy at all.

Thus, the Court finds that Plaintiffs' reliance upon Sedgwick's representation of Safety Lights' additional insured status was not reasonable. Accordingly, as a matter of law, Plaintiffs' claims for negligent and fraudulent misrepresentation fail.[16]

### 2. Statutory Claims

Section 4 of Article 21.21 of the Texas Insurance Code and Section 17.46 of the DTPA prohibit the making of any statement misrepresenting the terms of any insurance policy. *See* TX. INS. CODE art. 21.21, § 4(1); TX. BUS. & COM. § 17.46. Since amendments enacted in 1995, in order to state a claim for misrepresentation under the DTPA or Article 21.21 or DTPA, a plaintiff must show a misrepresentation upon which he relied which was the producing cause of economic damages. TX. BUS. & COM. § 17.50(a); *see American Home Shield of Texas, Inc. v. Kortz*, 2000 WL 1262617, at *3 (Tex. App.—Houston [1st Dist.] Sept.7, 2000, n.w.h.).

■■ Section 17.45(11) of the DTPA defines economic damages to mean "damages for pecuniary loss, including costs of repair and replacement. The term does not include exemplary damages." Defendant

14. There is no evidence in the record to demonstrate that Safety Lights ever attempted to obtain a copy of what it was told was the applicable policy prior to the *Wright* suit. Sedgwick's counsel, in oral argument, alluded to a lengthy delay in Lumbermens providing a copy of Policy 362 00 to Sedgwick, and that the policy that ultimately arrived unexpectedly did not contain an additional insured clause. *See also* List Aff., at 2. However, the record on these matters is incomplete. In any event, there is no evidence that this delay is an excuse for Safety Lights' failure to check, or at least to verify, the coverage.

15. Moreover, while the certificate stated that Safety Lights was an additional insured, it did not state the terms and conditions of additional insured coverage. If Policy 362 00 had in fact contained an additional insured provision, but one that excluded coverage for the liability ultimately incurred by Safety Lights, Safety Lights would not be entitled to coverage merely by virtue of the representation of additional insured status on the certificate.

16. In addition, Plaintiffs have not offered any evidence to show that Sedgwick made the misrepresentation of coverage knowingly or recklessly, as is required for a claim of fraudulent misrepresentation. *Johnson & Higgins v. Kenneco Energy Inc.*, 962 S.W.2d 507, 524 (Tex.1998). This is another ground for dismissal of Plaintiffs' fraud claim against Sedgwick.

Sedgwick contends that Safety Lights cannot state a claim under the DTPA because it has incurred no economic damages. The Court agrees. Safety Lights' damages and expenses related to the *Wright* suit were entirely born by TIG. There is no evidence in the record of any economic damage suffered by Safety Lights. Therefore, Safety Lights' DTPA and Article 21.21 claims fail as a matter of law. While TIG in its own right suffered an economic loss, Plaintiff TIG brings this suit only under its rights of subrogation under the insurance policy it issued to Safety Lights. *See* Complaint [Doc. # 1], ¶ 2. Subrogation

is the "substitution of one person in the place of another as to a lawful right or claim." *In re Texas Property and Casualty Ins. Guaranty Co.*, 989 S.W.2d 880, 884 (Tex.App.-Austin 1999, n.w.h.) (citing *Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 113 (Tex.App.-Dallas 1991, n.w.h.); *Lancer Corp. v. Murillo*, 909 S.W.2d · 122, 127 (Tex.App.-San Antonio 1995, n.w.h.)). A subrogee can have no greater rights than its subrogor. *Cockrell*, 817 S.W.2d at 113 (citation omitted); *Conversion Properties, LLC v. Kessler*, 994 S.W.2d 810, 814 (Tex.App.-Dallas 1999, n.w.h.). Therefore, TIG, as subrogee, cannot state a claim under the DTPA.[17]

17. Sedgwick asserts an alternative basis for dismissal of Plaintiffs' DTPA and Insurance Code claims, namely that Plaintiffs do not satisfy the reliance requirement for these causes of action. Since 1995, reliance has been an essential element of these claims. TX. BUS. & COM. § 17.50; *American Home Shield of Texas, Inc.*, 2000 WL 1262617, at *3 ("Under the DTPA, a consumer may bring an action when he has relied to his detriment on a false or misleading representation, and the reliance is a producing cause of economic damages"). Although not yet decided in Texas or federal courts, it appears that Texas courts will require that the reliance by a person aggrieved under the DTPA and Article 21.21 must be reasonable under the circumstances presented. *See also Bykowicz v. Pulte Home Corp.*, 950 F.2d 1046, 1050 (5th Cir. 1992) (holding that reliance requirement in deceptive trade practices statute prohibiting fraud in real estate transactions was requirement of "justifiable reliance").

The Court need not and does not reach the issue of reliance as to the DTPA and Article 21.21 claims in this case. However, as noted in the discussion on Plaintiffs' fraud and negligent misrepresentation claims against Sedgwick, in Texas, a named insured is held to have notice or constructive knowledge of all provisions in the policy of insurance. *See Ruiz*, 4 S.W.3d at 841; *Pankow*, 932 S.W.2d at 277; *Amarco Petroleum, Inc.*, 889 S.W.2d at 699–700; *Shindler*, 768 S.W.2d at 334–35; *see also Garrison Contractors, Inc. v. Liberty Mutual Ins. Co.*, 927 S.W.2d 296, 300 (Tex. App.-El Paso 1996), *aff'd*, 966 S.W.2d 482 (Tex.1998) (erroneous assertions by insurance agent held not to be actionable misrepresen-

tations under the DTPA and Insurance Code where the true facts were ascertainable from the face of the insurance policy); *Heritage Manor of Blaylock Properties, Inc. v. Petersson*, 677 S.W.2d 689, 690–91 (Tex.App.-Dallas, 1984, writ ref'd n.r.e.). An additional insured is not entitled to rely on a certificate of insurance itself to determine the scope of terms of coverage. *See Granite*, 832 S.W.2d at 429. The parties have not provided and the Court has not located legal authority mandating a distinction between the named insured and the additional insured in this context. Nor is there admissible evidence in the record to establish a factual basis for such as distinction. Finally, the Court has located no authority to support the principle that an erroneous representation such as issuance of a form certificate of insurance to a person, without any other specific verbal representations or conduct indicating to that person that coverage exists, will suffice as proof of a claim for actionable misrepresentation under the DTPA or Article 21.21 to satisfy the elements of "reliance" (or, under the old DTPA law, a "producing cause"). Therefore, if the Court were to make an *"Erie*-guess," it would conclude that Texas courts would hold that an additional insured's blind reliance on a certificate of insurance (with the document's explicit warning and qualifying language) to believe that CGL coverage exists is not justifiable for purposes of a claim for misrepresentation under Article 21.21 or the DTPA. Nevertheless, since Plaintiffs' DTPA and Article 21.21 claims are precluded because of the absence of economic damages, there is no reason for this Court to conclusively decide the reliance issue here.

## IV. CONCLUSION

The Court, on the available summary judgment record, holds as a matter of law that Plaintiffs have failed to establish a genuine fact question that additional insured coverage exists under Policy 362 00. The certificate of insurance Sedgwick issued to Safety Lights does not create insurance coverage from Lumbermens where the Policy actually issued provides for none. Plaintiffs have failed to carry their burden to show (or create a genuine fact issue) that there was a mutual mistake in the drafting of Policy 362 00. Plaintiffs therefore cannot show they were entitled to reformation of that contract. Plaintiffs have also failed to establish or raise a genuine question that Sedgwick had authority, actual or apparent, to bind Lumbermens to provide additional insured coverage to Safety Lights. Lumbermens cannot as a matter of law be liable for any negligent misrepresentations, fraudulent misrepresentations, or misrepresentations made in violation of Article 21.21 of the Texas Insurance Code or the DTPA that Sedgwick may have made. Because there is no coverage for Safety Lights under Policy 362 00, Plaintiffs' claims for defense and indemnity under the policy are dismissed as moot. Plaintiff TIG's claim for payment on the basis of subrogation also fails.

The Court also concludes that Plaintiffs have failed to produce probative evidence sufficient to establish all the elements of their claims that Sedgwick is liable for any negligent, fraudulent, Article 21.21 or DTPA misrepresentations. It is therefore

**ORDERED** that Plaintiffs' Motion for Summary Judgment [Doc. # 36] is **DENIED;**

**ORDERED** that Defendant Lumbermens' Motion for Summary Judgment [Doc. # 33] is **GRANTED;** and

**ORDERED** that Defendant Sedgwick James' Motion for Summary Judgment [Doc. # 35] is **GRANTED.**

A separate final judgment will be entered forthwith.