**In re TEXAS PROPERTY AND CASU-
ALTY INSURANCE GUARANTY
ASSOCIATION, Relator.**

No. 03–98–00608–CV.

Court of Appeals of Texas,
Austin.

April 8, 1999.

Rehearing Overruled May 27, 1999.

Paul D. Carmona, Jordan & Carmona, P.C., Austin, for Relator.

John Cornyn, Attorney General, Phillip E. Marrus, Asst. Atty. Gen., Austin, for Real Party In Interest.

Before Justices JONES, B.A. SMITH and YEAKEL.

J. WOODFIN JONES, Justice.

· Relator Texas Property and Casualty Insurance Guaranty Association ("Guaranty Association") sought indemnification from the State of Texas pursuant to former Chapter 110 of the Texas Civil Practice and Remedies Code for the payment of part of a medical malpractice judgment against a qualifying physician. The State objected to indemnity, and the trial court sustained the State's objection. In this original proceeding seeking a writ of mandamus, the Guaranty Association challenges the denial of indemnification. We will conditionally grant the writ.

## DISCUSSION

The controversy in this case involves the interplay between the Omnibus Health Care Rescue Act, codified in part as former Chapter 110 of the Texas Civil Practice and Remedies Code ("Chapter 110"),[1] and the Texas Property and Casualty Insurance Guaranty Act ("Guaranty Act").[2]

Chapter 110 of the Omnibus Health Care Rescue Act was intended to encourage health care professionals to provide charity care. *See State v. Pruett,* 900 S.W.2d 335, 337 (Tex.1995) (tracing legislative history of Omnibus Health Care Rescue Act). To further

1. Omnibus Health Care Rescue Act, 71st Leg., R.S., ch. 1027, § 17, 1989 Tex. Gen. Laws 4128, 4136 (Tex. Civ. Prac. & Rem.Code Ann. § 110.001–.007, since repealed).

2. *See* Tex. Ins.Code Ann. art. 21.28–C (West Supp.1999).

this purpose, Chapter 110 required the State of Texas to provide indemnification for malpractice judgments against health care professionals who render charity care in at least ten percent of their practice and who maintain valid medical liability insurance. *See* Tex. Civ. Prac. & Rem.Code Ann. former § 110.002 (West 1997).[3] The State is the payor of first recourse, but its liability for indemnification may not exceed $25,000 per occurrence.[4] *See* former § 110.004. The State may file an objection to indemnification in district court; the court's order on the State's objection is reviewable by an appellate court through application for writ of mandamus. *See* former § 110.006.

One of the enumerated purposes of the Guaranty Act is to "avoid financial loss to claimants or policyholders because of the impairment of an insurer." *See* Tex. Ins.Code Ann. art. 21.28–C, § 2(2) (West Supp.1999). To fulfill this purpose, the Act creates the Guaranty Association and requires it to discharge the policy obligations of an insurer that has become impaired. *Id.* § 8(b). An insurer placed under receivership is considered "impaired" for purposes of the Act. *Id.* § 5(9).

The instant case involves a medical malpractice judgment against Dr. Roy Yamada in the amount of $183,464.04. The claim was originally filed by Eileen McGuinness and her husband in May 1995, triggering coverage of a "claims made" insurance policy for professional liability held by Dr. Yamada effective November 1, 1994 through November 1, 1995. Before it paid the judgment, however, the insurer, Insurance Company of America ("ICA"), was placed in receivership. Because of ICA's status as an impaired insurer, the Guaranty Association became obligated to pay the judgment pursuant to the Guaran-

ty Act. *See* Ins.Code art. 21.28–C, § 8(b). The Guaranty Association settled with the plaintiffs for $100,000 in satisfaction of the judgment, and retained a full release of all claims.

Based on Dr. Yamada's eligibility for indemnification under former Chapter 110, the Guaranty Association requested indemnity from the State of Texas in the amount of $25,000. The State filed an objection to indemnity, which was sustained. The Guaranty Association now files an application for writ of mandamus asking this Court to hold that the trial court abused its discretion in sustaining the State's objection.

*Standard of Review*

Former section 110.006(b) specifically provides that a trial court's order on the State's objection to indemnification is reviewable only by application for writ of mandamus, for an abuse of discretion. *See* Tex. Civ. Prac. & Rem.Code former § 110.006(b); *State v. Pruett,* 900 S.W.2d 335, 336 (Tex. 1995). But a trial court has no discretion in determining what the law is; a clear failure by the trial court either to properly analyze or to properly apply the law is an abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Here, the trial court concluded that the State was not obligated to indemnify the Guaranty Association, but did not state the basis for its ruling. Therefore, the order sustaining the State's objection must be upheld on any applicable theory supported by the record. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

Because we can discern from the record no legally valid theory upon which to uphold the trial court's order, we conclude that the court failed to properly analyze and apply the law

---

3. Omnibus Health Care Rescue Act, 71st Leg., R.S., ch. 1027, § 17, 1989 Tex. Gen. Laws 4128, 4136 (Tex. Civ. Prac. & Rem.Code Ann. § 110.001–.007, since repealed). Chapter 110 expired September 1, 1997. *See* former section 110.007. Claims accruing under medical malpractice insurance policies issued prior to this effective date remain eligible for indemnification under the former law, which is continued in effect for that purpose. Act of May 26, 1995, 74th Leg., R.S., ch. 1034, § 4, 1995 Tex. Gen. Laws 5126. The 1995 amendments to the Act, however, do not apply to policies issued prior to

the effective date of August 28, 1995. Because the policy at issue in this appeal was issued prior to both effective dates, the applicable law is Chapter 110 as it appeared before the 1995 amendments. All references to Chapter 110 in this opinion refer to that version of the statute.

4. The statutory limit is increased to $100,000 for treatment involving pre-natal care and childbirth. *See* former § 110.004. Because the relevant treatment in this appeal involves neither, the State's maximum liability is $25,000.

and therefore abused its discretion. In so holding, we will address the four theories advanced by the State on which it claims the trial court's order may be upheld: (1) the Guaranty Association is not a participant in the Chapter 110 scheme; (2) the section 11(a) subrogation right provided for in the Guaranty Act cannot be engrafted onto Chapter 110; (3) equity dictates that the State should not be liable to the Guaranty Association; (4) Dr. Yamada was not covered by a valid medical liability insurance policy as required for indemnification under Chapter 110.

### The Guaranty Association Is Entitled to Indemnity Through Subrogation

■ The Guaranty Association contends that, as a matter of law, it is entitled to indemnification from the State in the amount of $25,000 because it is subrogated to Dr. Yamada's indemnity rights either through statutory or common-law subrogation principles. We agree.

#### 1. Statutory Subrogation

■ The Guaranty Act requires the Guaranty Association to undertake the policy obligations of an impaired medical malpractice liability insurer. See Ins.Code art. 21.28–C, § 8(b). In this case, the Guaranty Association fulfilled that duty by satisfying the medical malpractice judgment against Dr. Yamada through a settlement with the McGuinnesses. Having done so, the Guaranty Association became statutorily subrogated to Dr. Yamada's right to recover under the policy pursuant to section 11(a) of the Guaranty Act, which provides in part:

> A person recovering under this Act is considered to have assigned to the [Guaranty Association] the person's right under the policy ... to the extent of the person's recovery from the association. The [Guaranty Association] may pursue any such claims to which it is subrogated under this provision in its own name or in the name of the person recovering under this Act.

Ins.Code art. 21–28–C, § 11(a). Although we find the language of section 11(a) to be cumbersome at best, after closely analyzing this section in connection with article 21.28–C as a whole, we conclude that in the instant case the Guaranty Association was statutorily subrogated to Dr. Yamada's "right" under the ICA policy, and that the right referred to is Dr. Yamada's right to recover.

Having so concluded, we must next determine if Dr. Yamada's right to recover under the ICA policy included a right to indemnification from the State. To do so, we turn to the language of the policy itself. An endorsement to the ICA policy in question expressly states that "the State of Texas shall be the payor of first resort for an eligible medical malpractice claim for the amounts falling within the deductibles as set below." The endorsement then provides for a $25,000 deductible for an eligible medical malpractice claim "as set forth in House Bill 18, The Omnibus Health Care Rescue Act." Finally, the endorsement explains that the State is "liable for indemnification only if the damages are based on an eligible medical malpractice claim." Whether a claim is "eligible" is determined by the provisions in Chapter 110. We believe this endorsement gives Dr. Yamada the right under the ICA policy to recover from the State of Texas the first $25,000 of a Chapter 110 eligible medical malpractice claim such as the one in this appeal.

Because Dr. Yamada had the right to seek indemnity from the State of Texas under his ICA policy, and because section 11(a) gives the Guaranty Association the express statutory authority to assert Dr. Yamada's right, we conclude that the Guaranty Association may seek indemnification from the State for the first $25,000 it paid in satisfaction of the judgment against Dr. Yamada.

The State urges this Court to find otherwise, arguing that the "person recovering" under Section 11(a) is the beneficiary of the medical malpractice judgment against the physician, in this case Ms. McGuinness. See Ins.Code art. 21–28–C, § 11(a). Under the State's theory, section 11(a) gives the Guaranty Association *Ms. McGuinness'* right to recover because she is the only person who actually received proceeds from the malpractice lawsuit against Dr. Yamada. Because Ms. McGuinness has no right to Chapter 110 indemnification, the State argues, neither does the Guaranty Association.

The State's argument is fatally flawed for one simple reason: only an *insured* has a right to recover under an insurance policy. Section 11(a) subrogates the Guaranty Association to the "person's right *under the policy.*" Ins.Code art. 21–28–C, § 11(a) (emphasis added). Ms. McGuinness has no rights "under the policy" because she is not the insured; her only rights stem from her judgment against Dr. Yamada. Properly construed, section 11(a) gives the Guaranty Association Dr. Yamada's right to recover under the ICA policy.

The State makes the additional argument that the Guaranty Association is improperly "grafting" subrogation rights found in section 11(a) of the Guaranty Act onto Chapter 110. The State directs our attention to the fact that Chapter 110 is silent on the issue of subrogation; therefore, the State argues, in order to assert subrogation, the Guaranty Association section 11(a) is "inapplicable." The State, however, fails to explain why section 11(a) is not applicable, and we can discern no reason why the provisions found in the Guaranty Act would be inapplicable to the instant case.

■ Finally, the State argues that if section 11(a) applies, it envisions the "traditional" subrogation claim whereby the insured collects from his insurer and then the insurer becomes subrogated to any potential claim by the insured against a *third party* who is responsible for the victim's underlying injury. Once again, however, the State offers no support for its assertion. Because we see no reason to limit section 11(a) to include only "traditional" subrogation rights to recover, we conclude that section 11(a) ensures that the Guaranty Association is subrogated to any right to recover held by Dr. Yamada under his ICA policy, including the right to indemnification from the State. *See* Ins. Code art. 21–28–C, § 11(a).

In summary, we hold that the Guaranty Association is entitled to indemnification from the State in the amount of $25,000 pursuant to the statutory subrogation principles found in section 11(a). Therefore, the trial court abused its discretion in sustaining the State's objection to indemnity.

## 2. *Common–Law Subrogation*

■ Even if the Guaranty Association were not entitled to indemnification under statutory subrogation as held above, it would be entitled to Chapter 110 indemnification under common-law principles of subrogation applicable to all insurers. Subrogation is the substitution of one person in the place of another as to a lawful right or claim. *See, e.g., Cockrell v. Republic Mortgage Ins. Co.,* 817 S.W.2d 106, 113 (Tex.App.—Dallas 1991, no writ); *Lancer Corp. v. Murillo,* 909 S.W.2d 122, 127 (Tex.App.—San Antonio 1995, no writ). Texas courts have long recognized that there are two types of subrogation: conventional subrogation, which arises by a contract between the parties, and legal subrogation, which stems from equity and is governed by principles of equity. *See, e.g., Lexington Ins. Co. v. Gray,* 775 S.W.2d 679, 683 (Tex.App.—Austin 1989, writ denied) (citing *Ramey v. Cage,* 90 S.W.2d 626 (Tex. Civ.App.—Eastland 1935, no writ), and *Galbraith–Foxworth Lumber Co. v. Long,* 5 S.W.2d 162 (Tex.Civ.App.—Dallas 1928, writ ref'd)). The parties agree that legal subrogation applies in the present case.

■ Under the doctrine of common-law subrogation, it is clear that an insurer paying a claim against its insured becomes subrogated to any cause of action the insured may be entitled to bring against a third party responsible for the injury underlying the insurance claim. *See, e.g., Medina v. Herrera,* 927 S.W.2d 597, 604 (Tex.1996). However, we do not believe the insurer's right to subrogation is limited to this factual situation. Rather, we believe any right of the insured to indemnity will also pass to the insurer. *See Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627, 636 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *F.H. Vahlsing Inc. v. Hartford Fire Ins. Co.,* 108 S.W.2d 947, 950 (Tex. Civ.App.—San Antonio 1937, no writ); *cf. Highlands Ins. Co. v. New England Ins. Co.,* 811 S.W.2d 272, 274 (Tex.App.—San Antonio 1991, no writ) (insurer may be subrogated to its insured's right of recovery based on contract). We see no reason why these common-law subrogation principles should not apply to the right of the insured to Chapter 110 indemnification by the State.

■ One appellate court has directly addressed the issue of the insurer's right to indemnification under Chapter 110 pursuant to common-law subrogation principles. *See Texas Med. Liab. Trust v. Garza*, 918 S.W.2d 632, 637 (Tex.App.—Corpus Christi, orig. proceeding), *overruled on other grounds sub nom. State v. Thirteenth Court of Appeals*, 933 S.W.2d 43 (Tex.1996). In *Garza*, the State argued the insurer could not seek indemnification because it was not a "health care professional" as defined by Chapter 110. · The court disagreed, holding that Chapter 110, when read as a whole and in connection with its legislative history, indicates legislative intent that an insurer be subrogated to a physician's right to claim indemnity. *See id.* We agree with the extensive analysis set forth in the *Garza* opinion supporting the insurer's right to subrogation in connection with Chapter 110 indemnity rights. *See id.* at 637–38.

The supreme court has not directly addressed the issue of whether common-law subrogation principles allow insurers to benefit from Chapter 110 indemnity. However, we note that in *State v. Pruett*, 900 S.W.2d 335 (Tex.1995), a case in which an insurer sought indemnification under Chapter 110, the court did not question the insurer's right to be subrogated to the physicians' indemnity benefit. We can discern no reason why subrogation should be denied to an insurer that has satisfied a medical malpractice judgment against a qualifying physician under Chapter 110.

■ Having determined that an insurer may, through common-law subrogation principles, reap the benefits of its insured's Chapter 110 indemnification rights, we must next determine if the Guaranty Association is entitled to the same benefit when it takes on the duties of an impaired insurer. The State argues that the Guaranty Association is not entitled to indemnity because the legislature did not intend the Association to be a participant in the Chapter 110 scheme, and because

the Association has not furthered the mission of the Chapter 110 scheme in any meaningful sense. We disagree.

The State contends there are only three participants in the Chapter 110 scheme: the qualifying doctor, the insurer, and the State. The insurer participates by reducing malpractice premiums for qualifying doctors in an amount reflecting the reduction in the insurer's liability exposure because of the State's promise to indemnify.[5] The State urges this Court to find the Guaranty Association ineligible to receive the indemnification benefit because it is not an "insurer" as defined in Chapter 110,[6] and particularly because it has not participated in the Chapter 110 scheme by providing discounted premiums.

The difficulty with the State's argument is that Chapter 110 does not provide indemnification for insurers. Instead, the statute requires the State to indemnify the *health care professional. See* former § 110.002. Indeed, the Guaranty Association does not claim to be an insurer, nor to be entitled to indemnification either as an insurer or a health care professional. Thus, the real issue in this case is not whether the Guaranty Association should be denied indemnity because it is not a player in the Chapter 110 scheme; rather, the issue is whether the principles of subrogation apply to allow Dr. Yamada's indemnification benefit to flow to the Association. We are convinced that when the Guaranty Association takes on the liability of an insurer pursuant to the mandates of the Guaranty Act, it is entitled to Chapter 110 indemnity under the principles of common-law subrogation in the same manner that indemnity would otherwise flow to the insurer but for the insurer's impaired status. We therefore hold that the trial court abused its discretion in denying the Guaranty Association indemnification in the instant case.

### Equity Does Not Support the Trial Court's Decision

The State also argues that the trial court's order should be upheld because the court

5. The reduction in premiums was required by the Omnibus Health Care Rescue Act, 71st Leg., R.S., ch. 1027, § 18, 1989 Tex. Gen. Laws 4128, 4138–39 (enacting Tex. Ins.Code art. 5.15–4, since repealed).

6. *See* former § 110.001(5) ("'insurer' means an insurance company chartered to write … medical professional liability insurance in this state …").

could have concluded that equity dictates that the Guaranty Association not be entitled to subrogation. In support, the State directs us to *Associated Indemnity Co. v. Hartford Accident & Indemnity Co.*, 524 S.W.2d 373, 376 (Tex.Civ.App.—Dallas 1975, no writ), for the proposition that subrogation is a remedy used by courts to prevent unjust enrichment. Here, since no one has been unjustly enriched, subrogation is not the required remedy, and applying subrogation would improperly allow indemnification to flow to a quasi-governmental entity that has done nothing more than what the legislature has mandated.

■■■ While we agree that subrogation may be used to prevent unjust enrichment, we do not agree with the State's limited characterization of subrogation. We are aware of no authority limiting this equitable doctrine solely to preventing unjust enrichment. *Cf. Lancer*, 909 S.W.2d at 127 ("Subrogation is liberally applied, and is broad enough to include every instance where one person, not acting involuntarily, pays a debt another incurs."). Further, we disagree with the State's conclusory statement that "equities mitigate against giving the Guaranty Association subrogation rights to a fund which was never intended to benefit it." We decline to uphold the trial court's denial of indemnity based upon the State's general and unsupported contention that equity will not be served by granting the Guaranty Association subrogation rights to the Chapter 110 indemnification fund.

### *Dr. Yamada Was Entitled to Indemnification*

■■■ In its final argument, the State claims it cannot be required to indemnify the Guaranty Association for payment of the judgment against Dr. Yamada because Dr. Yamada himself was not entitled to indemnification. The State relies on section 110.005, which provides that indemnification is appropriate only if the health care professional against whom the claim is asserted is covered under a valid professional medical liability insurance policy. *See* former § 110.005(1).

The State asserts that because Dr. Yamada's policy had "lapsed" as of the date of judgment, so had his right to indemnification.

The State's argument is without merit. There is no question that Dr. Yamada held an ICA "claims made" medical malpractice insurance policy effective November 1994 to November 1995. Because this was a "claims made" policy, Dr. Yamada had valid insurance coverage for any claim made during that time period, regardless of when the alleged malpractice occurred and regardless of when any payment might be made pursuant to a judgment or settlement. The record shows the medical malpractice claim at issue was made in 1995 during the ICA policy period, and the parties apparently do not dispute ICA's coverage responsibility in the absence of its receivership. Whether Dr. Yamada failed to obtain insurance coverage after the expiration of the ICA policy is completely irrelevant to the question of whether he was covered for the liability claim at the time it was made.

Because allowing the ICA policy to "lapse" could not defeat Dr. Yamada's right to Chapter 110 indemnification, we decline to uphold the trial court's denial of indemnification to the Guaranty Association on this basis.

### CONCLUSION

Because we can discern no legally valid theory supported by the record upon which to uphold the trial court's order, we hold that the district court failed to properly apply the law and therefore abused its discretion when it upheld the State's objection to indemnification. Because we are confident the judge of that court will withdraw his order denying indemnification, a writ of mandamus will issue only on his failure to do so.