Appellants’ Motion for Rehearing Overruled;
Opinion issued on October 21, 2010 is withdrawn; Affirmed in Part, Reversed and
Remanded in Part, and Substitute Opinion on Rehearing filed January 20, 2011.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00092-CV



 

Reliance Insurance Company
(In Liquidation) and Texas Property and Casualty Insurance Guaranty Association, Appellants

V.

John Lyle Hibdon A/K/A J.L.
Hibdon, Appellee

 



On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 2006-77240



 

SUBSTITUTE OPINION ON REHEARING

We overrule appellants’ motion for rehearing, but
withdraw our opinion issued on October 21, 2010 and issue this substitute
opinion to further explain our disposition of this appeal.

Reliance Insurance Company (in liquidation)
(“Reliance”) and Texas Property and Casualty Insurance Guaranty Association
(“TPCIGA”) (collectively, “appellants”) sued John Lyle Hibdon a/k/a J.L.
Hibdon, claiming that Hibdon interfered with appellants’ statutorily-prescribed
rights to recover workers’ compensation payments by engaging in conversion,
conspiracy, and unjust enrichment.  All parties filed traditional and
no-evidence motions for summary judgment.  The trial court denied appellants’
motion and granted summary judgment in favor of Hibdon. 

In
issues one through three, appellants contend the trial court erred by denying
their motion for summary judgment and by granting Hibdon’s motion based on his waiver
of subrogation defense.  In issue four, appellants contend the trial court
erred by granting Hibdon’s traditional motion for summary judgment based on his
contention that no sums were owed to appellants; appellants argue they have a
right to priority payment even though they have been reimbursed.  In issue
five, appellants contend the trial court erred by granting Hibdon’s no-evidence
motion for summary judgment based on his contention there is no evidence
Reliance paid benefits to the workers’ compensation claimant.  In issue six,
appellants contend the trial court erred by denying their motion for summary
judgment because appellants conclusively proved their causes of action and the
amount of their subrogation lien.  In issue seven, appellants contend the trial
court erred by denying their motion for summary judgment because they
conclusively proved TPCIGA’s statutory lien.  Finally, in issue eight,
appellants contend the trial court erred if it considered Hibdon’s late-filed
“election of remedies” and “one satisfaction rule” defenses.

We
affirm the portions of the trial court’s orders denying appellants’ motion for
summary judgment and granting Hibdon’s motion for summary judgment relative to TPCIGA’s
claims.  However, we reverse that portion of the trial court’s order granting
Hibdon’s motion for summary judgment relative to Reliance’s claims and remand
for proceedings consistent with this opinion. 

I.   Background

The significant
facts are undisputed.  RME Petroleum Company (“RME”) contracted with Grey Wolf
Drilling Company, L.P. (“Grey Wolf”) to drill a well (“RME/Grey Wolf
contract”).  Hibdon was employed by RME.  The RME/Grey Wolf contract required
Grey Wolf to maintain certain insurance policies with RME named as an
additional insured.  The contract also obligated Grey Wolf to secure a waiver
of subrogation in favor of RME but did not specify whether RME’s employees were
to be included in the waiver. 

Grey
Wolf purchased a workers’ compensation policy with a $250,000 deductible from Reliance
(“Reliance policy”).  In the Reliance policy, Reliance agreed that it would not
enforce its right to subrogation against “[a]ny person or organization” in
whose favor Grey Wolf was required by written contract to obtain a waiver of
subrogation.  Cunningham Lindsey was retained to administer employee injury
claims under the Reliance policy.  

In March
2000, Grey Wolf’s employee, Lee Valentine, was injured in the course and scope
of his employment.  Cunningham Lindsey paid $243,397 in workers’ compensation
benefits to Valentine.  Reliance then went into receivership and TPCIGA[1]
assumed payment of workers’ compensation benefits to Valentine.[2] 
From December 2002 through January 2005, TPCIGA paid Valentine $96,602.70.  The
parties agree that Grey Wolf reimbursed $243,397 to Cunningham Lindsey and $96,602.70
to TPCIGA. 

Valentine
filed a third-party action against RME and Hibdon.  Pursuant to an
indemnification agreement in the RME/Grey Wolf contract, Grey Wolf’s insurance
carrier, Lexington Insurance Company (“Lexington”) agreed to defend RME and Hibdon. 
On December 7, 2004, Hibdon, by and through Lexington’s claims personnel,
settled with Valentine for $350,000.  On January 21, 2005, Lexington sent a
check for $350,000 to Valentine.  

Notwithstanding
the fact that they had been fully reimbursed, appellants sued Hibdon,
contending he was obligated by statute to pay them before paying Valentine. 
Appellants later filed a traditional and no-evidence motion for summary
judgment in which they presented evidence and argument that they are entitled
to priority in payment from Valentine’s settlement with Hibdon.  Hibdon
responded and filed his own traditional and no-evidence motion for summary
judgment asserting multiple grounds for disposition of appellants’ claims.  The
trial court denied appellants’ motion and granted Hibdon’s motion without
specifying the grounds on which judgment was granted.

II.   Summary Judgment

The
parties filed both traditional and no-evidence motions for summary judgment. 
We review de novo the trial court’s summary judgment.  Provident Life
& Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  Issues not
expressly presented to the trial court by written motion for summary judgment
cannot be considered as grounds to affirm or reverse the trial court’s judgment.
 Tex. R. Civ. P. 166a(c); McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 341 (Tex. 1993).  “A motion must stand or fall on the grounds
expressly presented in the motion.”  McConnell, 858 S.W.2d at 341. 

Under
the traditional summary-judgment standard of review, a movant has the burden to
demonstrate there are no genuine issues of material fact and he is entitled to
judgment as a matter of law.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  In determining whether there
is a genuine fact issue, evidence favorable to the non-movant is taken as true
and all reasonable inferences are made in his favor.  Id.  A movant is
entitled to summary judgment only if he conclusively proves all essential elements
of his claim.  Johnston v. Crook, 93 S.W.3d 263, 273 (Tex. App.—Houston
[14th Dist.] 2002, pet. denied).

In a
no-evidence motion for summary judgment, the movant must specifically identify
the elements for which there is no evidence.  Walker v. Thomasson Lumber Co.,
203 S.W.3d 470, 473–74 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  The
trial court must grant the motion unless the respondent presents evidence
raising a genuine issue of material fact.  Tex. R. Civ. P. 166a(i).  However,
the respondent is “‘not required to marshal its proof; its response need only
point out evidence that raises a fact issue on the challenged elements.’”  Hamilton
v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (quoting Tex. R. Civ. P. 166a(i)
cmt. (1997)).

When both
parties move for summary judgment and the trial court grants one motion and
denies the other, we review summary-judgment evidence from both parties and
determine all questions presented.  FM Properties Operating Co. v. City of
Austin, 22 S.W.3d 868, 872 (Tex. 2000).  We must render the
judgment that the trial court should have rendered.  Id.  When a trial
court does not specify the grounds for granting summary judgment, we must
affirm the judgment if any summary-judgment ground is meritorious.  Id.

III.   Waiver of Subrogation

In their
first three issues, appellants contend the trial court erred by granting Hibdon’s
motion for summary judgment based on his waiver of subrogation defense.  Our
analysis of these issues requires interpretation of the relevant contracts.  

A.   Rules for
Contract Construction

When interpreting a contract, we must
ascertain and give effect to the contracting parties’ intent.  Perry Homes
v. Cull, 258 S.W.3d 580, 606 (Tex. 2008).  We focus on the language used in
the contract because it is the best indication of the parties’ intent.  Id.
 We must examine the entire contract in an effort to harmonize and effectuate
all of its provisions so that none are rendered meaningless.  Seagull Energy
E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006). 
Therefore, we will not give controlling effect to any single provision;
instead, we read all of the provisions in light of the entire agreement.  Id.
(citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)).  We may
not rewrite the contract or add to its language under the guise of
interpretation.  See Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d
154, 161–62 (Tex. 2003).  Rather, we must enforce the contract as written.  See
Royal Indem. Co. v. Marshall, 388 S.W.2d 176, 181 (Tex. 1965).  If
possible, we should avoid a construction that is unreasonable, oppressive,
inequitable, or absurd.  Pavecon, Inc. v. R-Com, Inc.,
159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.).  Language should be
given its plain grammatical meaning unless it definitely appears that the
intention of the parties would thereby be defeated.  Reilly v. Rangers Mgmt.,
Inc., 727 S.W.2d 527, 529 (Tex. 1987).

A court may determine that a contract
is ambiguous even if neither party makes the claim.  In re Sterling Chems.,
Inc., 261 S.W.3d 805, 809 (Tex. App.—Houston [14th Dist.] 2008, orig.
proceeding) (citing Sage St. Assocs. v. Northdale Constr. Co.,
863 S.W.2d 438, 445 (Tex. 1993)).  However, a mere disagreement about
interpretation does not render a contract ambiguous.  See id. at 808. 
Instead, a contract is ambiguous if it is susceptible to more than one
reasonable interpretation.  J.M. Davidson, Inc. v. Webster, 128 S.W.3d
223, 229 (Tex. 2003).  By contrast, a contract that may be given a definite or
certain meaning is not ambiguous and will be construed as a matter of law.  See
id.  Determining whether contract language is ambiguous presents a question
of law for the court.  See id.    

B.   RME/Grey Wolf
Contract

In their
first issue, appellants argue that the waiver of subrogation provision is
inapplicable because it does not apply to Hibdon.  The parties agree that a
provision in the RME/Grey Wolf contract required Grey Wolf to maintain certain
types of insurance coverage during the pendency of the agreement.  The
provision required Grey Wolf to name RME as an additional insured on these
policies and to procure a waiver of subrogation in RME’s favor:

11.3  
Contractor [Grey Wolf] shall maintain in full force and effect during the term
of this agreement insurance coverages of the types and in the minimum amounts
set forth below:

(a)  Workmen’s Compensation Insurance in full compliance with the laws
of the state wherein operations are performed . . . .

. . .

. . . . . 
Operator [RME] and its non-operating Interest Holders shall be named as
additional insureds in each of such policies.  [A] “Waiver of Subrogation”
in favor of Operator, its subsidiaries, affiliated companies and non-operating
Interest Holders shall be added to all policies of insurance, including
Contractor’s [Grey Wolf] property insurance covering Contractor’s rig and
equipment.

(emphasis added). 
Pursuant to the above provisions, Grey Wolf purchased the workers’ compensation
policy from Reliance.  The Reliance policy contained the following relevant
language:

We
[Reliance] have the right to recover our payments from anyone liable for an
injury covered by this policy.  We will not enforce our right against the
person or organization named in the Schedule, but this waiver applies only with
respect to bodily injury arising out of the operations described in the
Schedule where you are required by a written contract to obtain this waiver
from us.

. . .

Schedule

. . .

Any person
or organization from whom the Named Insured [Grey Wolf] has agreed by written
contract to furnish this waiver.

            Appellants
argue that there is no waiver of subrogation in favor of Hibdon because the
provision in the RME/Grey Wolf contract did not specifically mention employees. 
Appellants assert that language was used to include employees in a
separate indemnity provision in the RME/Grey Wolf contract:

11.1   Each
party hereto agrees to indemnify and hold the other party, its officers,
employees, subsidiaries, affiliated companies and non-operating Interest
Holders harmless from any and all losses, claims, actions, costs, expenses,
judgments, subrogations or other damages resulting from injury . . . to any
person (including, but not limited to, the parties hereto, their respective
employees, representatives, agents, invitees and subcontractors) or damage
to property of any person . . . arising out of the negligent act or willful
misconduct of the indemnifying party, its employees, agents, contractors or
invitees.

(emphasis added).  

 

According
to appellants, the absence of the term “employees” in the waiver-of-subrogation
provision reflects the parties’ intention that the waiver was to benefit RME,
not individual employees.[3] 
Hibdon responds that inclusion of the term “employees” in the RME/Grey Wolf
contract provision was unnecessary.  Specifically, Hibdon relies on the
following quote: “It is not necessary for a waiver of subrogation to name all
of the employees of an employer when a carrier waives subrogation rights in
favor of a company or companies contracting with the employer.”  Am. Risk Funding Ins. Co. v. Lambert, 59 S.W.3d 254, 258–59 (Tex. App.—Corpus Christi
2001, pet. denied) (citing Lumbermens Mut. Cas. Co. v. Carter, 934
S.W.2d 912 (Tex. App.—Beaumont 1996, no writ); Nat’l Union Fire Ins. Co. v.
Pennzoil, 866 S.W.2d 248 (Tex. App.—Corpus Christi 1993, no writ)).

We do
not find the court’s analysis in Lambert persuasive.  Lambert is factually
distinguishable because the carrier asserted its subrogation rights against the
injured employee of its insured, whereas Reliance asserts its rights against
the negligent employee of the third-party company.  Moreover, the cases cited
in support of the opinion are not directly on point.  See Lumbermens,
934 S.W.2d at 914 (concluding that parties intended to waive subrogation rights
in favor of a specific company, even though they used the company’s informal
name in the waiver); Pennzoil, 866 S.W.2d at 251 (concluding that
carrier could pursue subrogation rights against two companies not named in
waiver).

The
waiver requirement in the RME/Grey Wolf contract is straightforward: “[A]
‘Waiver of Subrogation’ in favor of Operator, its subsidiaries, affiliated
companies and non-operating Interest Holders shall be added to all policies of
insurance.”  Considering the contract as a whole, we conclude the language sub
judice is unambiguous and construe the contract as written.  See Marshall,
388 S.W.2d at 181.  According to the plain meaning of the provision, RME and
Grey Wolf intended for Grey Wolf’s workers’ compensation carrier to waive
subrogation in RME’s favor but did not intend for a similar waiver in Hibdon’s
favor.  If the parties intended to provide a subrogation waiver in Hibdon’s
favor, they could have added the term “employees” to the provision.[4]


Because
the provision does not include employees, liability insurance is not fully
substituted for legal remedies such as subrogation in the underlying
multi-contractor operation.  See, e.g., Trinity Universal Ins. Co. v.
Bill Cox Constr., Inc., 75 S.W.3d 6, 13 (Tex. App.—San Antonio 2001, no
pet.) (explaining the purpose of subrogation waiver is “to avoid litigation
over claims for damages while also protecting the parties by ‘in effect simply
requir[ing] one of the parties to the contract to provide insurance for all of
the parties.’” (quoting S.S.D.W. Co. v. Brisk Waterproofing Co., 556
N.E.2d, 1097, 1103 (N.Y. 1990) (Alexander, J., dissenting))); Lambert,
59 S.W.3d at 257 (“Usually, it is easier to settle a personal injury lawsuit, when
there are no subrogation rights to consider.  In order to make third-party
suits easier to settle, the employer pays the compensation carrier a premium to
waive its subrogation rights.  The carrier further benefits by not having to
litigate its subrogation rights.”).  Nevertheless, we would impermissibly add language
to the provision by interpreting it to include a waiver of subrogation in favor
of RME’s employees.  See Schaefer, 124 S.W.3d at 161–62.[5]

Accordingly,
we sustain appellants’ first issue and hold the trial court erred to the extent
it granted summary judgment against appellants and in favor of Hibdon based on Hibdon’s
waiver-of-subrogation defense.  Our resolution of issue one renders moot appellants’
second issue (fair-notice doctrine) and third issue (whether the waiver applies
to TPCIGA).

III.   Statutory Subrogation and Assignment

In issues
four through seven, appellants contend the trial court erred by failing to
award $339,999.70 in damages against Hibdon.  Appellants argue that they
conclusively established their statutory liens.  Our analysis of these issues
requires interpretation of the relevant statutes.

A.        Rules for
Statutory Interpretation

When
resolution of an issue requires interpretation of a statute, we review under a de novo standard.  Mokkala v. Mead, 178 S.W.3d 66,
70 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  In construing a statute, our objective is to determine
and give effect to the legislature’s intent.  See Nat’l Liab. & Fire
Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).  If possible, we must
ascertain that intent from the language the legislature selected and should not
refer to extraneous matters for intent not expressed in the statute. 
Id.  If the meaning of the statutory language is unambiguous, we adopt
the interpretation supported by the plain meaning of the
words.  St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.
1997).

B.        Third-Party
Administrator

            We begin with
Hibdon’s argument that Reliance has no statutory right to recover amounts
previously paid because Cunningham Lindsey—not Reliance—paid all the workers’
compensation benefits to Valentine and was fully reimbursed by Grey Wolf. 
Hibdon notes that, in the header of Cunningham Lindsey’s payment history, Grey
Wolf is denominated as Cunningham Lindsey’s “client.”  Appellants argue that
Cunningham Lindsey was Reliance’s third-party administrator and made payments
on behalf of Reliance.  We agree with appellants.

            As
third-party administrator, Cunningham Lindsey acted as Reliance’s agent when it
made payments to Valentine.  The payments by Cunningham Lindsey satisfied
Reliance’s contractual obligation to provide workers’ compensation coverage to
Grey Wolf and its employees.  See, e.g., Dunn v. S. Farm Bureau Cas.
Ins. Co., 991 S.W.2d 467, 473 (Tex. App.—Tyler 1999, pet. denied)
(“When a principal acts through an agent, it is as if the principal acts
personally.”).  Accordingly, we hold the trial court erred to the extent it
granted Hibdon’s motion for summary judgment based solely on Hibdon’s bare
assertion that payments were made by and reimbursed to Cunningham Lindsey. 

C.        Chapter 417
of the Workers’ Compensation Act

We next address
appellants’ contention that they conclusively established Reliance’s right to
statutory subrogation.  Appellants claim that Chapter 417 of the Workers’
Compensation Act permits Reliance to exercise subrogation rights relative to
Valentine’s third-party claim.

Chapter
417 of the Act is entitled “Third-Party Liability.”  The relevant sections of
Chapter 417 are as follows:

(a) An
employee or legal beneficiary may seek damages from a third party who is or
becomes liable to pay damages for an injury or death that is compensable under
this subtitle and may also pursue a claim for workers’ compensation benefits
under this subtitle.

(b) If a
benefit is claimed by an injured employee or a legal beneficiary of the
employee, the insurance carrier is subrogated to the rights of the injured
employee and may enforce the liability of the third party in the name of the
injured employee or the legal beneficiary.  The insurance carrier’s subrogation
interest is limited to the amount of the total benefits paid or assumed by the
carrier to the employee or the legal beneficiary, less the amount by which the
court reduces the judgment based on the percentage of responsibility determined
by the trier of fact under Section 33.003, Civil Practice and Remedies Code,
attributable to the employer.  If the recovery is for an amount greater than
the amount of the insurance carrier’s subrogation interest, the insurance
carrier shall:

(1)
reimburse itself and pay the costs from the amount recovered; and 

(2) pay the
remainder of the amount recovered to the injured employee or the legal
beneficiary.

Tex. Lab. Code Ann. §
417.001 (West 2006).

(a) The net
amount recovered by a claimant in a third-party action shall be used to
reimburse the insurance carrier for benefits, including medical benefits, that
have been paid for the compensable injury.

Tex. Lab. Code Ann. § 417.002
(West 2006).

According
to appellants, these sections afford carriers who pay workers’ compensation
benefits the right to “first money” from any distribution of third-party funds,
regardless of whether they were reimbursed.  Appellants argue that the Texas
Supreme Court’s decision in Argonaut Insurance Co. v. Baker, 87 S.W.3d
526 (Tex. 2002), supports their contention that “any payments made under a
deductible policy are deemed payments by the insurance carrier, even if
subsequently reimbursed by the employer.”  We disagree with appellants’
interpretation of Argonaut.

The
principal issue addressed in Argonaut was “whether allowing the carrier
to be reimbursed for benefits paid from the deductible, violates [the Insurance
Code] which provides that an employee ‘may not be required to pay any of the
deductible amount.’”  Id. at 527.  The supreme court held that, pursuant
to section 417.002, the carrier had a right to subrogation for the full amount
of workers’ compensation benefits it paid, including the deductible, from an
injured employees’ settlement with a liable third party.  Id.  at 531. 
The court reasoned, “When the carrier is fully reimbursed from the recovery
from a liable third party . . . the money is being paid to the carrier by that
responsible third party, not by the employee, pursuant to the carrier’s
statutory right.”  Id. at 530.  The court noted that its holding “is
consistent with the Texas Department of Insurance’s position”:  

Rule XIX of
the Department’s publication Texas Basic Manual of Rules, Classifications
and Experience Rating Plan for Workers’ Compensation and Employers’ Liability
Insurance (2nd Reprint) provides that “[i]n the event the insurer makes a
recovery from a third party through subrogation, the amount recovered shall
first be applied to the amount paid on the claim by the insurer and then to
the amount of the deductible paid by the insured, with reimbursement being made
to the insured, if necessary.”  Id. at R-[44–45].  This construction
is reasonable and consistent with the statute’s plain language, and is
therefore entitled to “serious consideration.”  Tarrant Appraisal Dist. v.
Moore, 845 S.W.2d 820, 823 (Tex. 1993).

Argonaut, 87 S.W.3d at 531 (emphasis
added).

We note
that Argonaut did not involve subrogation rights of a carrier that had
been fully reimbursed for the workers’ compensation benefits previously paid. 
In fact, the dissent informs us that the carrier had not been reimbursed: “The
[majority] permits [the carrier] to recover the amount of the deductible from
[the employee’s] settlement, instead of from [the employer,] even though [the
employer] is legally responsible under the Insurance Code for paying the
deductible, and has not done so.” Argonaut, 87 S.W.3d at 532
(Hankinson, J., dissenting) (emphasis added).  Additionally, appellant’s
position is not supported by the cited Department of Insurance publication,
which merely expresses that, “in the event” a carrier receives a
recovery from a liable third party, the carrier should first reimburse itself
for the amount paid above the deductible, then the amount paid as the
deductible, then its insured, if necessary.  Even if the publication could be interpreted
to support the contention that a fully-reimbursed carrier has first priority to
recover from a liable third party, the supreme court did not cite the
publication for such proposition.  Instead, the publication was cited to
acknowledge the Department’s position that a carrier may recover its deductible
from a third party without violating the Insurance Code.  Accordingly, Argonaut
does not support the contention that a workers’ compensation insurance
carrier may assert subrogation rights against an insured’s employee who recovers
from a third party after the workers’ compensation carrier has been fully
reimbursed.  The parties have not cited, and we have not identified, any authority
addressing this specific issue.

We turn
to the above cited subrogation provisions in Chapter 417.  Statutory
subrogation is governed by the terms of the statute under which it is claimed. 
Tex. Ass’n of Sch. Bds., Inc. v. Ward, 18 S.W.3d 256, 259 (Tex.
App.—Waco 2000, pet. denied).  “[T]he plain language of [section 417.001]
removes any question as to whether [Reliance] has the right to subrogation, but
it does not answer the question of” whether the right ends when Reliance is
reimbursed.  Id.  “Rather, that question must be answered by an examination
of what rights the Legislature created when it established the right to
‘subrogation’ under section [417.001].”  Id. at 259–60.

Under
the Chapter, a carrier’s right to subrogation “is limited to the amount of the
total benefits paid or assumed by the carrier to the employee . . . .  If the
recovery is for an amount greater than the amount of the insurance carrier’s
subrogation interest, the insurance carrier shall: (1) reimburse itself
. . . ; and (2) pay the remainder . . . to the injured employee . . . .”  Tex.
Lab. Code Ann. § 417.001(b) (emphasis added).  The next section of the Chapter
expresses, “The net amount recovered by a claimant in a third-party action
shall be used to reimburse the insurance carrier for benefits . . . that
have been paid . . . .”  Id. § 417.002(a) (emphasis added).  We
acknowledge that Chapter 417 contemplates situations in which the carrier
recovers an amount exceeding its subrogation interests and must distribute the
amount to the injured employee.  However, nothing in Chapter 417 authorizes or
obligates a carrier to pursue subrogation even when it has no present debt.

The
principal purpose of these sections is to ensure that workers’
compensation carriers are reimbursed when a third party is liable for
the injured employee’s damages.  The plain meaning of “reimburse” is “to pay
back (an equivalent for something taken, lost, or expended) to someone.” 
Webster’s Third Int’l Dictionary 1914 (1993).  It is axiomatic that once a
party has been reimbursed, there is no need to assert subrogation.  Cf.
Burns v. Ledbetter, 56 Tex. 282, 286 (1882) (holding, in context of
equitable subrogation, “[W]e do not find it necessary to inquire whether Ledbetter
should have been granted the equitable relief of subrogation or not, for it
now appears that he has been reimbursed and does not need subrogation.”
(emphasis added)).  Grey Wolf fully reimbursed Reliance pursuant to section
2053.203 of the Insurance Code which requires an insured to reimburse a carrier
for any amount the carrier paid an employee within the self-insured
deductible.  See Tex. Ins. Code Ann. § 2053.203(b)(2).  Consequently,
there was no summary-judgment evidence supporting Reliance’s contention that it
had a present statutory-subrogation interest in sums paid to Valentine.  
Moreover, there was no summary-judgment evidence that Reliance is fulfilling a
duty to recover and reimburse any sum of money to Grey Wolf; in fact, the
record contains the affidavit of a Grey Wolf representative who stated that
Reliance is not authorized to seek subrogation on behalf of Grey Wolf.  Thus,
having been fully reimbursed pursuant to section 2053.203, it is absurd for
Reliance to pursue a statutory-subrogation action.  Applying the plain meaning
of section 417.002(a) to these facts, there was no sum of money recovered “by a
claimant in a third-party action” which is necessary “to reimburse the
insurance carrier for benefits.”  Tex. Lab. Code Ann. § 417.002(a).  Instead,
the amount recovered by Valentine is “treated as an advance against future
benefits . . . [he] is entitled to receive.”  Id. § 417.002(b).  Therefore,
we conclude Reliance is not entitled to prosecute a subrogation action because
it has no subrogated interest to pursue under Chapter 417.[6]


Our
conclusion does not contravene the long-held principle that workers’
compensation carriers have a right to “first money” recovered.  “For decades,
Texas law has required the first money recovered by an injured worker from a
tortfeasor to go to the worker’s compensation carrier, and until the carrier ‘is
paid in full the employee or his representatives have no right to any
funds.’”  Tex. Mut. Ins. Co. v. Ledbetter, 251 S.W.3d 31,
33 (Tex. 2008) (emphasis added) (quoting Argonaut, 87 S.W.3d at
530); Fort Worth Lloyds v. Haygood, 151 Tex. 149, 156, 246 S.W.2d 865,
869 (1952); see also Estrada v. Wausau, Ins. Co., 985 S.W.2d
480, 483–85 (Tex. App.—San Antonio 1998, pet. denied) (holding that money paid
to injured employee by liable third-party’s insurer rightfully belonged to
carrier even though liable third-party’s insurer later settled with carrier for
an amount that partially reimbursed the carrier for benefits it paid); Hartford
Cas. Ins. Co. v. Albertsons Grocery Stores, 931 S.W.2d 729,
734 (Tex. App.—Fort Worth 1996, no writ) (“[A]fter an employee has
collected workers’ compensation, the employee has no cause of action against
the third party until the carrier has recovered the amount it paid the
employee.”).  This extensive lineage of cases supports the proposition that
carriers have a right to “first money” until they are paid in full.  Appellants
were paid in full; they no longer have a right to “first money.”

Appellants
argue that permitting Hibdon to remit directly to Valentine in this situation
will result in a double recovery for Valentine.  See Ledbetter, 251
S.W.3d at 33 (explaining that “[f]irst-money recovery . . . prevents double
recovery by workers”); Foreman v. Sec. Ins. Co. of Hartford, 15
S.W.3d 214, 216 (Tex. App.—Texarkana 2000, no pet.) (“The rationale for
permitting subrogation of workers’ compensation payments is to prevent double recoveries by injured
employees, while permitting carriers to recover some of their disbursements,
thus keeping rates lower.”).  Of course, requiring Hibdon to pay any amount to
the previously reimbursed appellants would provide them a double recovery. 
Further, we disagree with the contention that allowing Hibdon to remit directly
to Valentine affords him a double recovery detrimental to appellants’
subrogation rights.  Chapter 417 ensures that Valentine’s recovery will be
credited toward any future benefits appellants are required to pay: “Any amount
recovered that exceeds the amount of the reimbursement required . . . shall be
treated as an advance against future benefits . . . .”  Tex. Lab. Code Ann. §
417.002(b); Tex. Workers’ Comp. Ins. Fund v. Travis, 912 S.W.2d
895, 898 (Tex. App.—Fort Worth 1995, no writ) (“Any amount of payment
received by a claimant from a third-party over the amount used to reimburse the
workers’ compensation carrier is treated as an advance against future payments
by the carrier.”).  

Accordingly,
we conclude that the trial court did not err by denying appellants’ motion for
summary judgment based on appellants’ contention that they conclusively
established the amount of their statutory-subrogation interest against Hibdon. 
Nevertheless, we conclude the trial court erred to the extent it granted
Hibdon’s motion for summary judgment against Reliance.  In his motion for summary
judgment, Hibdon argued only that Reliance was not owed any sum because
Cunningham Lindsey paid Valentine’s workers’ compensation benefits—an argument
we have rejected.[7] 
Hibdon did not present evidence or argument in support of the contention that
Reliance has no statutory lien because it had been fully reimbursed. [8] 
Thus, we overrule in part and sustain in part appellants’ fourth through sixth
issues.

D.        Article
21.28-C of the Property and Casualty Insurance Guaranty Act

In their
seventh issue, appellants contend the trial court erred by denying TPCIGA summary
judgment on its claims.  According to appellants, they conclusively established
TPCIGA’s right, under the Insurance Code, to an assignment of Valentine’s right
to recover $96,602.70 from Lexington (the amount TPCIGA paid in benefits).  Appellants
direct us to the following provisions in the Texas Insurance Code:

A person
recovering under this Act is considered to have assigned to [TPCIGA] the
person’s right under the policy, and the person’s rights to recover for the
occurrence made the basis of the claim under this Act under any policy of
insurance issued by an unimpaired insurer to the extent of the person’s
recovery from the association.  The association may pursue any such claims to
which it is subrogated under this provision in its own name or in the name of
the person recovering under this Act.

Tex. Ins. Code Ann. art.
21.28-C, § 11(a) (current version at section 462.307 of the Texas Insurance
Code).[9]

Section 11(a)
affords TPCIGA an assignment of Valentine’s “rights to recover for the
occurrence made the basis of the claim under this Act under any policy of
insurance issued by an unimpaired insurer.”  Section 11(a) refers to the right
it prescribes as a subrogation right: “[TPCIGA] may pursue any such claims to
which it is subrogated under this provision in its own name or in the name
of the person recovering under this Act.”  Id. (emphasis added); see
also In re Tex. Prop. & Cas. Ins. Guar. Ass’n, 989 S.W.2d 880,
883–84 (Tex. App.—Austin 1999, no pet.) (describing the right prescribed by
section 11(a) as a statutory-subrogation right).  The legislature’s decision to
describe the assignment of the claimant’s right to recover as a “subrogation”
right is logical because “[s]ubrogation places one party in the place of
another so that the new party gains the rights of the former party regarding a
claim.”  Hartford Cas. Ins., 931 S.W.2d at 733.  Under both section
11 and section 417.001, the insuring entity stands in the place of the claimant
against a liable third party to the extent of the claimant’s recovery from the
insuring entity.[10]

The
clear intent of section 11 is to provide TPCIGA means for reimbursement and to ensure
the claimant does not receive a double recovery at TPCIGA’s expense.  Section
11 provides TPCIGA with several methods of reimbursement, including subrogation
rights and a limited right of recovery against the insured, but the legislature
did not express whether these methods are independently available or mutually
exclusive.  We interpret section 11 to provide TPCIGA with means for being
fully reimbursed once.  Appellant’s proposed interpretation would entitle
TPCIGA to full recovery from the insured and full recovery vis-a-vis exercise
of statutory-subrogation rights.  This interpretation would result in a
statutory right to double recovery.  See C & H Nationwide, Inc.
v. Thompson, 903 S.W.2d 315, 322 n.5 (Tex. 1994) (“Statutory provisions
will not be so construed or interpreted as to lead to absurd conclusions, great
public inconvenience, or unjust discrimination, if the provision is subject to
another, more reasonable construction or interpretation.”).[11]

Under
section 11, Grey Wolf was required to reimburse TPCIGA because Grey Wolf’s net
worth exceeded a specified amount.  See Tex. Ins. Code Ann. art.
21.28-C, § 11(b)(1) (current version at section 462.308(a)(2) of the Texas
Insurance Code).  The parties readily admit Grey Wolf reimbursed TPCIGA for the
$96,602.70 paid in benefits to Valentine.  Having been fully reimbursed
pursuant to the net-worth provision in section 11, TPCIGA has no further right
to reimbursement.  Additionally, Valentine’s recovery from Hibdon actually
benefits TPCIGA because it has an offset for future benefits in the amount
recovered by Valentine.  See Tex. Ins. Code Ann. art. 21.28-C, § 12(a).

Accordingly,
we overrule appellants’ seventh issue and affirm the trial court’s order
granting summary judgment against TPCIGA claims.

V.   One Satisfaction Rule

Finally,
in their eighth issue, appellants argue the trial court could not have
considered Hibdon’s arguments pertaining to the “one satisfaction rule” because
he raised this argument for the first time in his reply to appellants’
summary-judgment response.[12] 
Hibdon argues that appellants were on notice regarding his “one satisfaction
rule” argument because he contended in his summary-judgment motion that
plaintiffs were owed no sums.

“A
motion must stand or fall on the grounds expressly presented in the motion.”  See
McConnell, 858 S.W.2d at 341.  A reply is not a motion for summary
judgment.  Guest v. Cochran, 993 S.W.2d 397, 403 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).  A movant is not entitled to use its reply to
amend its motion for summary judgment or to raise new and independent summary-judgment
grounds.  Garcia v. Garza, 311 S.W.3d 28, 36 (Tex. App.—San Antonio
2010, pet. denied).

            In his motion
for summary judgment, Hibdon argued that Reliance was owed no sums because it
never paid benefits to Valentine—not because it had already been reimbursed. 
Hibdon did not raise an argument premised upon, or similar to, the “one satisfaction
rule” in his motion; therefore, he may not raise it for the first time in his
reply.  We sustain appellants’ eighth issue.

VI.   Conclusion

            In sum, we affirm those
portions of the trial court’s orders denying appellants’ motion for summary
judgment and granting Hibdon’s motion for summary judgment relative to TPCIGA’s
claims.  However, we reverse that portion of the trial court’s order granting
Hibdon’s motion for summary judgment relative to Reliance’s claims.  Accordingly,
we remand this case to the trial court for further proceedings consistent with
this opinion.

                                                

                                                                                                                                                                                                                                                

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel
consists of Justices Seymore and Brown.[13]                                                                                                                       









[1]
“[TPCIGA] is a nonprofit, unincorporated legal entity composed of all member
insurers, who must be members of [TPCIGA] as a condition of their authority to
transact insurance in the state of Texas. . . .  [TPCIGA] stands in the place
of a member insurer when such insurer is impaired . . . to the extent of its
obligation for covered policy claims unpaid by the impaired insurer . . . .”  Tex.
Prop. & Cas. Ins. Guar. Ass’n v. De Los Santos, 47 S.W.3d 584, 585 n.1
(Tex. App.—Corpus Christi 2001, no pet.).  





[2]
The record reflects that Cunningham Lindsey continued to make payments within
the self-insured deductible to Valentine during the period from Reliance’s
entry into receivership until TPCIGA began making payments.  There is
apparently no dispute regarding these payments.





[3]
Appellants seem to ignore the legal effect of Grey Wolf’s indemnification
agreement with RME and its employees.  Pursuant to this agreement, Grey Wolf
has no interest in pursuing reimbursement of sums paid in connection with
Valentine’s workers’ compensation claim.  





[4]
Hibdon refers to the affidavit of a Grey Wolf officer who averred that Grey
Wolf intended the waiver-of-subrogation provision to cover RME’s employees. 
However, the record indicates that the trial court sustained appellants’
objections to the affidavit, and, on appeal, Hibdon does not challenge the
trial court’s evidentiary ruling.





[5] Hibdon also suggests appellants present inconsistent
positions because they contend the subrogation waiver does not include RME’s
employees while contending TPCIGA may sue Hibdon because he is an employee of
RME entitled to coverage from Lexington, an unimpaired insurer.  See Tex.
Ins. Code Ann. art. 21.28-C, § 11(a) (assigning to TPCIGA a worker’s right to
recover under policy issued by an unimpaired insurer to the extent of TPCIGA’s
payment to worker).  We do not find appellants’ contentions inconsistent.  As
explained, the RME/Grey Wolf contract expressly provided for indemnification in
favor of RME and its employees, therefore, Grey Wolf’s insurer Lexington
was obligated to indemnify RME and Hibdon. 





[6]
Our disposition should not be interpreted or cited as authority for claimants,
insurance carriers, employers, or third parties to circumvent the priority of
payment and allocation of sums recovered in third-party actions as prescribed
under Chapter 417.





[7]
In his no-evidence motion for summary judgment, Hibdon argued that “Reliance
cannot present a scintilla of evidence that would create a genuine issue of
material fact that it paid a penny to or on behalf of Lee Valentine.  Thus,
Reliance has no evidence that it is entitled to recovery of any sums . . . [or]
that it has a valid interest . . . .”  Consequently, Hibdon’s no-evidence
challenge did not burden appellants to present evidence or argument that
Reliance is entitled to pursue subrogation rights despite having been fully
reimbursed.    





[8] We acknowledge that Hibdon asserted in his response
to appellants’ motion for summary judgment (filed seven days before the summary
judgment hearing) that he was entitled to summary judgment relative to
Reliance’s claims because Reliance had been fully reimbursed.  We do not
construe Hibdon’s response as a supplemental motion for summary judgment. 
Therefore, this ground was neither asserted in Hibdon’s motion for summary
judgment nor considered by the trial court.  See McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993) (“[W]e hold that
a motion for summary judgment must itself expressly present the grounds upon
which it is made.”).  Further, nothing in the record indicates the trial court
considered Hibdon’s response as a supplemental motion.   





[9]
Because former article 21.28-C, section 11(a) applies and is virtually
identical to section 462.307, we will refer to “section 11.”





[10]
Hibdon argues TPCIGA does not have a cause of action against him because
section 11(a) gives TPCIGA a right to recover “under any policy of insurance issued
by an unimpaired insurer,” and he is not an unimpaired insurer.  Our
disposition of appellants’ seventh issue renders this argument moot.





[11]
During oral argument, appellants argued that TPCIGA will never technically be
made whole because of its continuing obligation to pay workers’ compensation
benefits to Valentine.  The Insurance Code addresses this situation by providing
TPCIGA an offset pursuant to section 417.002 when its claimant recovers from a
third party an amount in excess of the payments already made by TPCIGA.  See
Tex. Ins. Code Ann. art. 21.28-C, § 12(a) (current version at section
462.252(b) of the Texas Insurance Code).





[12]
In his reply, Hibdon also argued that TPCIGA had no cause of action because of
the “election of remedies” defense.  Our disposition of Hibdon’s motion for
summary judgment relative to TPCIGA’s claims renders this argument moot.





[13]
Justice Yates participated during oral argument and in the original
opinion.  However, she did not participate in the disposition of
appellant’s motion for rehearing.  See Tex. R. App. P. 41.1(b)
(“After argument, if for any reason a member of the panel cannot participate in
deciding a case, the case may be decided by the two remaining justices.”).